[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**April 26, 2004**
**THOMAS  K. KAHN**
**CLERK**

_____

No. 02-12054

_____

D. C. Docket No. 97-01935-CV-UUB

AURELIO O. GONZALEZ,

Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT OF CORRECTIONS,
James Crosby, Secretary,

Respondent-Appellee.

_____

No. 02-12483

_____

D. C. Docket Nos. 96-08752 CR-WJZ
& 90-08108 CR-WJZ

EMIL LAZO,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____


_____

No. 02-14224

_____

D. C. Docket  No. 99-00023 CV


STEPHEN A. MOBLEY,

Petitioner-Appellant,

versus

DERRICK SCHOFIELD, Warden,
Georgia Diagnostic and
Classification Center,

Respondent-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 26, 2004)**

2

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS and WILSON, Circuit Judges.[*]

CARNES, Circuit Judge:

The Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996), clamped down on second and successive petitions filed by state prisoners seeking federal habeas corpus relief under 28 U.S.C. § 2254, and those filed by federal prisoners seeking relief under 28 U.S.C. § 2255.  See 28 U.S.C. §§ 2244(a)-(b), 2255 ¶ 8.  Naturally, habeas petitioners and § 2255 movants have sought to circumvent the AEDPA's restrictions on second round collateral attacks in federal courts.  One of the most popular vehicles used in the attempted end-runs is a Fed. R. Civ. P. 60(b) motion requesting that the prior judgment denying relief be set aside.

Given the number of cases involved and the importance of the issues, we entered an order granting hearing or rehearing en banc in three cases in order to answer some common questions that have arisen about the use of Rule 60(b) motions to obtain relief from judgments that denied § 2254 relief (in two of the cases before us), or § 2255 relief (in one of the cases).  Gonzalez v. Sec'y of the

---

[*] Judge William H. Pryor Jr., became a member of the Court on February 20, 2004, which was after this case was submitted for decision, and he did not participate in the decision of it.

3

Dep't of Corr., 326 F.3d 1175 (11th Cir. 2003). Specifically, we asked each of the

three would-be appellants to brief and argue, insofar as it related to his case: 1)

whether the certificate of appealability requirement contained in 28 U.S.C. §

2253(c) applies to an attempted appeal of the denial of Rule 60(b) relief from a

judgment denying § 2254 or § 2255 relief; 2) if so, whether a certificate of

appealability should be issued in his case; 3) what standards should govern Rule

60(b) motions aimed at judgments in § 2254 or § 2255 proceedings, that is, when

should they be granted; and 4) was it an abuse of discretion for the district court to

deny the Rule 60(b) motion in his case?

I.

We begin with the relevant facts and procedural history of each of the three

cases before us, in the sequence in which the panel decisions or orders were issued

in them.

A.

A decade ago at a retrial Stephen Mobley was convicted and sentenced to

death for the 1991 murder of a Domino's Pizza employee during an armed robbery.

See Mobley v. State, 265 Ga. 292, 455 S.E.2d 61 (1995). During the sentencing

phase, Mobley introduced as potential mitigating circumstance evidence that he

4

had offered to plead guilty in exchange for any punishment other than death. In rebuttal the prosecution called Andrew Fuller, who had been the district attorney when the prosecution began but no longer was. Fuller testified to the factors which had led him to seek the death penalty. He said those factors included the actual circumstances of the crime, and Mobley's "pure unadulterated meanness" which had been aptly demonstrated by a number of his comments since he killed the victim in cold blood. Mobley v. Head, 306 F.3d 1096, 1097-99 (11th Cir. 2001) (Tjoflat, J., dissenting). Fuller also testified that the victim's family supported his decision to seek a death sentence. Id. at 1098-99. The victim's family's feelings about the penalty had not carried much weight in his decision; he told the jury that "95 percent of the decision [was] made based on the evidence [he saw] that describe[d] the defendant for [him]." Id. at 1099.

Among the issues Mobley raised in his direct appeal was a contention that Fuller should not have been permitted to testify about the factors that influenced him to seek a death sentence in the case. Mobley, 265 Ga. at 298-99, 455 S.E.2d at 69-70. The Georgia Supreme Court rejected that contention, after concluding that Fuller's testimony about why he had turned down Mobley's plea offer was relevant since Mobley had put in evidence that he had made the offer. Id. The Court, however, had second thoughts about permitting a capital defendant to introduce

evidence that he had offered to plead guilty in return for a sentence less than death.

The first thoughts of the Georgia Supreme Court on the subject had come during an earlier appeal Mobley filed following a mistrial due to error at his first trial. Mobley v. State, 262 Ga. 808, 426 S.E.2d 150 (1993). Mobley asked the Georgia Supreme Court, which had the case before it primarily to decide a double jeopardy issue arising from the mistrial, also to decide whether he could introduce evidence at the retrial that he had offered to plead guilty conditioned on not receiving the death penalty. Id. at 810-11, 426 S.E.2d at 152-53. The Court said that he could, but that if he did the State would be allowed to explain its reasons for insisting on a death sentence. Id. And that is how things played out at the retrial: Mobley put in evidence that he had offered to plead guilty in return for a sentence less than death; and Fuller, the former prosecutor who had rejected that offer, testified about why he had decided nothing less than death would do.

When the case returned to it on direct appeal after the retrial, the Georgia Supreme Court had an opportunity to see the problems that had sprung from the evidentiary box that its ruling in the first appeal had opened. The Court realized that permitting testimony about a defendant's plea offer and the reasons it had been rejected would likely lead to attorneys on both sides testifying and could also put highly inflammatory matters before the jury. Facing up to its mistake, the Court

6

announced that evidence of a defendant's conditional guilty plea offer and its rejection would not thereafter be allowed in Georgia capital cases. Mobley, 265 Ga. at 300, 455 S.E.2d at 70 ("[W]e now hold that offers by defendants to plead guilty and testimony of prosecutors regarding their reasons for rejecting such offers are no longer admissible."). It was too late to close that evidentiary box in Mobley's case, of course, but the Georgia Supreme Court decided that neither the testimony concerning the plea offer and its rejection nor anything else that happened at the retrial had been reversible error. It affirmed Mobley's conviction and death sentence. Id. at 301, 455 S.E.2d at 71.

Thereafter, Mobley sought state habeas relief which was denied, see Turpin v. Mobley, 269 Ga. 635, 502 S.E.2d 458 (1998), and federal habeas relief which was denied by the district court on May 26, 2000, a denial which we affirmed, see Mobley v. Head, 267 F.3d 1312 (11th Cir. 2001), cert. denied, 536 U.S. 968, 122 S. Ct. 2682 (2002) (mem.); our mandate was issued on June 9, 2002.

On July 16, 2002, which was two-and-a-half weeks after the United States Supreme Court denied certiorari in his appeal from the denial of federal habeas relief, Mobley filed an "Extraordinary Motion for New Trial as to Sentence" in state court. That motion sought a new sentencing stage trial where Mobley could present the victim's mother to testify that the family had acquiesced in the

7

prosecutor's decision to seek the death penalty only because they had been unaware that a sentence of life without parole was an option. The state trial court denied Mobley's motion, reasoning that even if the testimony of the victim's mother were presented to a jury, "it [could] not reasonably be concluded that the opposition of the victim's family to the death penalty . . . would probably produce a different verdict." See Mobley, 306 F.3d at 1099. Mobley applied to the Georgia Supreme Court for a discretionary appeal of the denial of his motion, but his application was denied. Id. His execution was set for August 5, 2002.

On August 2, 2002, Mobley filed in the federal district court a "Motion for Stay of Execution and for Relief from Judgment Pursuant to Fed. R. Civ. P. 60(b)." The judgment he sought relief from is the one the district court had entered on May 26, 2000, denying his § 2254 habeas petition. The district court denied Mobley's Rule 60(b) motion on August 3, 2002 in an order stating that "petitioner concedes, moreover, that the respondent is correct in asserting that pursuant to the current state of the law in the Eleventh Circuit, this motion must be treated as a second or successive habeas action." The district court thought that our prior decision in Felker v. Turpin, 101 F.3d 657 (11th Cir. 1996), required that all Rule 60(b) motions in habeas cases be treated as second or successive petitions.

8

Because it treated Mobley's Rule 60(b) motion as a second or successive habeas petition, the district court was compelled to reject it. The reason is that Mobley had not obtained an order from this Court permitting the district court to consider a second or successive petition, as he was required to do by § 2244(b)(3)(A); he could not obtain one since the ground upon which relief was sought fit neither of the two circumstances that are set out in § 2244(b)(2). Mobley filed an application for a certificate of appealability so that he could appeal the denial of his Rule 60(b) motion, and the district court denied it.

On August 5, 2002, Mobley came to this Court with the following filings: an application under § 2253(c) for a certificate of appealability so that he could appeal the district court's denial of his Rule 60(b) motion; a motion to recall the mandate this Court had issued on June 9, 2002 in conjunction with our affirmance of the denial of Mobley's first habeas petition; and, a motion for a stay of execution. Mobley, 306 F.3d at 1099-1100. That same day, a panel of this Court entered an order staying the execution. Mobley v. Head, No. 02-14224 (August 5, 2002) (per Barkett and Wilson, JJ., by quorum).

On September 18, 2002, a panel of this Court, with one judge dissenting, extended the stay of execution that it had previously granted. Mobley v. Head, 306 F.3d 1096 (11th Cir. 2002). The panel majority believed that in denying Mobley's

9

Rule 60(b) motion the district court had correctly interpreted our prior Felker decision, but anticipated that the Supreme Court would soon decide in Abdur'Raham v. Bell, 535 U.S. 1016, 122 S. Ct. 1605 (mem.) (granting certiorari on April 22, 2002), whether all Rule 60(b) motions are subject to the restrictions applicable to second or successive petitions. Wanting the benefit of the upcoming decision in Abdur'Raham, the majority granted Mobley a stay without ruling on any of his other applications or motions.

Judge Tjoflat dissented from issuance of the stay of execution, and would have also denied: Mobley's application for a certificate of appealability; his motion to recall the mandate that had issued in connection with our prior decision in the case; and an application for permission to file a second or successive habeas petition, which Judge Tjoflat thought Mobley had filed in the case, see n.19 below. Mobley, 306 F.3d at 1098-1107. In Judge Tjoflat's view, the district court and panel majority had misinterpreted our Felker decision, which he believed did not and could not have held that all Rule 60(b) motions are to be denied as second or successive petitions. Id. at 1102-1105. He suggested instead that, consistent with Felker, "a Rule 60(b) motion should only be considered a second or successive habeas corpus petition if the former seeks to assert constitutional violations and thus is the practical equivalent of the latter." Id. at 1104 (internal marks omitted).

10

A claim that the State had perpetrated a fraud on the federal court in order to obtain the judgment denying the habeas petition could be raised in a Rule 60(b)(3) motion, but Mobley's claim alleged at most a fraud on the state court, not one on the federal court. Id. at 1105-06. Under Judge Tjoflat's view of the proper relationship of Rule 60(b) and the restrictions on second or successive petitions, Mobley's motion should have been denied by the district court, albeit for different reasons than that court gave.

After Mobley was granted a stay of execution in light of the upcoming decision in Abdur'Rahman, the Supreme Court quashed the writ of certiorari in that case as improvidently granted. Abdur'Rahman v. Bell, 537 U.S. 88, 123 S. Ct. 594 (2002). Thereafter, we voted to hear the Mobley case en banc. See Gonzalez, 326 F.3d at 1176.

### B.

The second would-be appellant is Emil Lazo, who was convicted in 1991 of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C § 841(a)(1), and was sentenced to 293 months imprisonment. He appealed, arguing only that the evidence was insufficient to support his conviction, and in 1993 we affirmed his conviction. See Lazo v. United States, 314 F.3d 571 (11th Cir. 2002),

11

vacated for reh'g en banc, 326 F.3d 1175 (11th Cir. 2003). In 1996 Lazo filed a § 2255 motion to vacate his sentence based on ineffective assistance of counsel at sentencing, and in 1998 the district court denied relief. Lazo requested a certificate of appealability, but the district court denied him one. See id. Lazo then came to this Court with an application for a certificate of appealability, and also filed a second request for one in the district court. Both efforts were unsuccessful, and in August 1999 we dismissed Lazo's attempted appeal for lack of a certificate of appealability. See id.

In January 2002, Lazo filed a pro se motion in the district court styled: "Motion for Relief From Judgment in the Collateral Proceedings filed under 28 U.S.C. § 2255 Pursuant to the Federal Rules of Criminal Procedure 12(b)(2) & Federal Rules of Civil Procedure 60(b)(4) and/or (6) Under the Premise the Otherwise Final Judgment is Void." See id. His motion and an accompanying brief put forward the contention that the indictment on which Lazo had been tried in 1991 was insufficient to give the district court subject matter jurisdiction for a number of asserted reasons, including failure to allege interference with interstate or foreign commerce, and failure to provide him with notice of the penalty he faced. Two months after Lazo's motion was filed, the district court summarily denied it. Lazo then filed a notice of appeal. The district court granted Lazo

12

permission to proceed in forma pauperis, but denied his motion for a certificate of appealability. See id. at 573.

When the case reached this Court on Lazo's notice of appeal, a panel characterized the threshold issue as whether Lazo was required to obtain a certificate of appealability before he could appeal the denial of his motion. See id. at 573. Inquiring into the true nature of the motion, the panel explained that a § 2255 motion and a Rule 60(b) motion have different purposes. A § 2255 motion is aimed at having a judgment of conviction and sentence set aside because of some constitutional violation, jurisdictional defect, or other ground that makes the judgment subject to collateral attack. In contrast, a Rule 60(b) motion is aimed at having a prior judgment denying § 2255 relief from a conviction and sentence set aside because of some problem with or defect in the proceeding that led to the judgment denying § 2255 relief. Id.

Examining the substance of what Lazo had filed in the district court, the panel concluded that it was not a true Rule 60(b) motion, but instead was "the functional equivalent of a successive § 2255 motion." Id. It was that, because it did not directly attack the district court's 1998 judgment denying § 2255 relief, but instead went after the 1991 judgment of conviction and sentence on a number of grounds not raised in the earlier § 2255 motion. Because Lazo's latest filing

13

merely raised new grounds of attack on his 1991 conviction and sentence, the panel thought it "readily apparent that the motion is really a successive § 2255 motion in 60(b)'s clothing." Id. As a result, the panel concluded that the district court's order denying that motion was indeed "a final order in a proceeding under section 2255" within the meaning of § 2253(c)(1)(B), which requires a certificate of appealability before any appeal can be taken. Id. at 573-74.

The panel construed the notice of appeal Lazo had filed as an application to this Court for a certificate of appealability, and denied it because reasonable jurists would not find it debatable whether the district court had properly denied Lazo's latest motion. Given his undisputed failure to obtain the certificate required by § 2255 ¶ 8 before filing what amounted to a second or successive motion, the district court clearly had no choice but to deny that motion. Id. at 574-75. After denying Lazo a certificate of appealability, the panel dismissed his appeal. Id. at 575.

We later vacated the panel's order so that we could reconsider the case en banc. Gonzalez, 326 F.3d at 1176.

C.

Our final would-be appellant is Aurelio Gonzalez, who was convicted in a Florida state court for robbery with a firearm, and was sentenced to 99 years imprisonment in 1992. He did not file a direct appeal, but in November of 1996 he

14

filed in state court a collateral motion attacking his conviction on grounds of newly discovered evidence which he claimed showed that his guilty plea was unintelligent, unknowing, and involuntary. The state trial court denied relief in December of 1996. Gonzalez appealed, but a state appellate court affirmed. Gonzalez v. State, 692 So. 2d 900 (Fla. 3d DCA 1997) (table).

On June 17, 1997, Gonzalez filed a § 2254 petition attacking his conviction on the same grounds he had asserted in the collateral motion he had filed in state court. On September 9, 1998, the district court dismissed his habeas petition as time-barred, on the ground that it had not been filed within the one-year statute of limitations set out in § 2244(d)(1). Initially, the district court granted a certificate of appealability, but we vacated it and remanded for clarification because the certificate did not specify any issues, which was contrary to § 2253(c)(3). On remand the district court reconsidered and denied Gonzalez a certificate of appealability, and on April 6, 2000 so did a judge of this Court. That was the end of Gonzalez's appeal from the dismissal of his habeas petition.

A little over a year later, in July of 2001, Gonzalez filed a Rule 60(b) motion asking the district court to relieve him of its final judgment dismissing his federal habeas petition as time barred. The ground he gave was the intervening Supreme Court decision in Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361 (2000), which

15

interpreted the "properly filed" clause of the tolling provision contained in § 2244(d)(2).[1] The district court denied Gonzalez's motion for Rule 60(b) relief on March 5, 2002, and Gonzalez filed a notice of appeal from that denial. The district court declined to grant a certificate of appealability, but a judge of this Court granted one on the issue of whether the district court's September 9, 1998 dismissal of Gonzalez's habeas petition was error.

When the appeal authorized by that certificate reached a panel of this Court for decision, it decided that the issue which had been specified in the certificate of appealability is not directly related to the order Gonzalez is seeking to appeal. Gonzalez v. Sec'y for the Dep't of Corr., 317 F.3d 1308 (11th Cir. 2003), vacated for rehearing en banc, 326 F.3d 1175 (11th Cir. 2003). Gonzalez is not seeking to appeal the 1998 judgment dismissing his habeas petition; his attempt to appeal that judgment ended unsuccessfully in the year 2000, when he was denied a certificate of appealability for that purpose. What Gonzalez is seeking to appeal now, as the panel explained, is the district court's 2002 order denying his Rule 60(b) motion for relief from the judgment that had dismissed his habeas petition in 1998. Id. at 1310.

---

[1] 28 U.S.C. § 2244(d)(2) specifies that: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." That subsection includes the one-year statute of limitations which had provided the basis for the dismissal of Gonzalez's habeas petition.

16

If a certificate of appealability is required for an appeal from the denial of Rule 60(b) relief in a habeas case, Gonzalez needs one focusing on that 2002 order and any of the issues it presents. Id.

The Gonzalez panel decided that a certificate of appealability is required before an appeal of the denial of Rule 60(b) relief from a judgment denying habeas relief is permitted. In so holding, the panel aligned this circuit with five of the six other circuits that have addressed the issue. Id. at 1310-12. The Gonzalez decision went beyond that in the Lazo case – which had involved a second or successive petition parading as a Rule 60(b) motion – and "effectively extend[ed] Lazo's holding to appeals involving the denial of true Rule 60(b) motions." Id. at 1312. The panel characterized Gonzalez's filing as a true Rule 60(b) motion, because it does not assert a new ground for relief from his conviction and sentence or re-assert an old one; instead, the motion is aimed solely at re-opening the judgment that had been entered against Gonzalez in his prior § 2254 proceeding on statute of limitations grounds without regard to the merits of any claims. Id. at 1311.

As a ground for re-opening that judgment, Gonzalez's latest motion asserted that Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361 (2000), had changed the controlling law about which time spent in state post-conviction proceedings is to be excluded from the running of the statute of limitations. The Artuz decision, which

17

did change the law of this circuit on that point, see Weekley v. Moore, 244 F.3d 874, 876 (11th Cir. 2001), had not been released until just over two years after the judgment dismissing Gonzalez's § 2255 motion as time barred had been entered, and seven months after his efforts to appeal that judgment had ended.

The panel did not imply any view about whether Artuz would change the statute of limitations result in the case, Gonzalez 317 F.3d at 1314 n.3, concluding instead that even if it would, that is not a valid ground for Rule 60(b) relief. One reason the Gonzalez panel gave is that it was bound by the rule announced in Mobley, which is that in the post-AEDPA era all Rule 60(b) motions are to be treated as second or successive petitions and denied on that basis unless they fit within the narrow exceptions for them set out in § 2244(b)(2). Id. at 1312. The other reason the panel gave is that even without the Mobley rule, the result would have been the same in Gonzalez's case; his motion also would have been denied under the pre-AEDPA circuit law governing when judgments denying habeas relief can be reopened based on changes in the applicable law. See id. at 1313. Because the Gonzalez panel believed that result was not debatable among jurists of reason, it denied a certificate of appealability in the case and ordered the appeal dismissed. Id. at 1313-14.

We later vacated the panel's order and reinstated the case for consideration en banc.  Gonzalez, 326 F.3d at 1176.

II.

We begin our discussion of the law with this preliminary note.  Throughout this opinion we do not distinguish between the three cases before us based upon whether they involve state prisoners and § 2254 law or federal prisoners and § 2255 law, because there is no material difference in the relevant statutory language, see § 2253(c)(1)(A) & (B), or in how the issues arising from that language should be resolved.  See Gonzalez, 317 F.3d at 1311 n.1; see also Walker v. Crosby, 341 F.3d 1240, 1249 n.4 (11th Cir. 2003); compare § 2244(b) with § 2255 ¶ 8.  What we say in this opinion about certificates of appealability and Rule 60(b) motions as they relate to § 2254 proceedings applies equally to § 2255 proceedings, and vice versa.  When we say "habeas petition" we mean to include "§ 2255 motion," and our use of "habeas petitioner" includes "§ 2255 movant" as well.

A.

The Lazo and Gonzalez panel decisions address the certificate of appealability requirement as it applies to two broad categories of Rule 60(b) motions.  Lazo concerns the category most frequently seen, which is second or successive § 2255 motions or § 2254 petitions cross-dressed as Rule 60(b) motions.

Despite the clothing Lazo put on it, his is not a true Rule 60(b) motion because it does not concern a defect in the earlier § 2255 proceeding which led to the judgment denying relief to Lazo. Stripped to its essence, Lazo's motion attacks the underlying judgment of conviction and sentence itself on grounds not asserted in the prior § 2255 proceeding. Lazo, 314 F.3d at 572-73.

The other category of Rule 60(b) motions are the true ones. An example of them is the motion filed in the Gonzalez case. That motion seeks to set aside the prior judgment denying habeas relief on a traditional Rule 60(b) ground for relief from a prior judgment, or at least on a ground that was sometimes used during the pre-AEDPA era. Gonzalez, 317 F.3d at 1310-11. The ground is an intervening change in the law applicable to the original § 2254 petition and its claims. Id. at 1311; see generally Ritter v. Smith, 811 F.2d 1398, 1401 (11th Cir. 1987) (prior to enactment of the AEDPA, Rule 60(b) relief sometimes available as a result of change in the law).

The Lazo panel held that the § 2253(c)(1) requirement of a certificate of appealability applies to the denial of a Rule 60(b) motion, at least when the motion is the functional equivalent of a second or successive petition, Lazo, 314 F.3d at 573-74, which is to say when it is not a true Rule 60(b) motion. The Gonzalez panel took that holding one step further, concluding that a certificate of

20

appealability is required before there can be an appeal of any Rule 60(b) motion, even a true one. Gonzalez, 317 F.3d at 1311-12.

B.

We agree with the Gonzalez panel that a certificate of appealability is required for the appeal of any denial of a Rule 60(b) motion for relief from a judgment in a § 2254 or § 2255 proceeding. This position is in line with the decisions of five of the six other circuits to consider the question. See Kellogg v. Strack, 269 F.3d 100, 103 (2d Cir. 2001); Rutledge v. United States, 230 F.3d 1041, 1046-47 (7th Cir. 2000); Morris v. Horn, 187 F.3d 333, 336 (3d Cir. 1999); Langford v. Day, 134 F.3d 1381, 1382 (9th Cir. 1998); Zeitvogel v. Bowersox, 103 F.3d 56, 57 (8th Cir. 1996). The only court of appeals to go the other way, the Fifth Circuit, has offered no explanation for its different direction. See Dunn v. Cockrell, 302 F.3d 491, 492 (5th Cir. 2002).

We find persuasive the explanation the Second Circuit has given for the majority position. See Kellogg, 269 F.3d at 103. By its plain terms, the § 2253(c)(1) certificate of appealability requirement applies to "the final order" in a § 2254 or § 2255 proceeding, and Rule 60(b) motions have been considered final orders for appellate purposes in other types of proceedings. See id.; Stone v. INS, 514 U.S. 386, 401, 115 S. Ct. 1537,1547 (1995) (noting that the denial of a Rule

21

60(b) motion is a separate final order). Because § 2253(c)(1) refers to "the final order," it could be argued that there is only one true final order in each habeas case to which the certificate of appealability requirement applies. However, in the Dictionary Act, which is codified at 1 U.S.C. § 1, Congress has made it clear that in the statutes it enacts, "unless the context indicates otherwise words importing the singular include and apply to several persons, parties, or things . . . ." See United States v. Fior D'Italia, Inc., 536 U.S. 238, 263, 122 S. Ct. 2117, 2133 (2002) ("under the Dictionary Act, 1 U.S.C. § 1, a statutory provision in the singular may include the plural where that would work in the context"); Barr v. United States, 324 U.S. 86, 91, 65 S. Ct. 522, 525-26 (1945) (citing 1 U.S.C. § 1 as authority for construing the statutory term "buying rate" to include more than one buying rate); Dobard v. Johnson, 749 F.2d 1503, 1509 (11th Cir. 1985) (citing 1 U.S.C. § 1 as authority for the conclusion that "the alternative forum provision of Sec. 2241(d), though phrased in the singular, would have been intended by Congress to be treated as in the plural"). Here, the context does not indicate otherwise, and paying attention to the Congressional command in 1 U.S.C. § 1 carries out the evident intent behind § 2253(c)(1). There is no reason to treat orders denying habeas relief and subsequent orders denying motions to reopen those earlier orders differently for

purposes of the certificate of appealability requirement, and there is every reason to treat them the same.[2]

The certificate of appealability is a threshold or gateway requirement which serves to filter out from the appellate process cases in which the possibility of reversal is too unlikely to justify the cost to the system of a full appellate examination.  See Miller-El v. Cockrell, 537 U.S. 322, 337, 123 S. Ct. 1029, 1040 (2003) (By enacting the certificate of appealability provisions in the AEDPA, "Congress confirmed the necessity and the requirement of differential treatment for those appeals deserving of attention from those that plainly do not.").  There can be no question that the certificate of appealability filter applies when a prisoner is appealing the denial of relief in his collateral attack on the judgment of conviction and sentence itself.  See 28 U.S.C. § 2253(c).

Given that, it would make no sense to remove the filter when the same prisoner is appealing the denial of Rule 60(b) relief from the judgment denying relief, which is a kind of collateral attack on the rejection of his collateral attack.

---

[2] Although it agrees with us that the word "the" in the statutory term "the final order" can be read in the plural, the dissent (we will use "the dissent" throughout this opinion to refer to Judge Tjoflat's separate opinion specially concurring in part and dissenting in part) thinks it should not be read that way unless doing so would carry out the legislative intent behind the certificate of appealability requirement in § 2253(c)(1).  Dissenting Op. at 108.  We agree with that.  Our disagreement with the dissent stems from our recognition that the evident legislative intent behind requiring such certificates in habeas cases was to filter out undeserving appeals with a minimum of judicial effort, and that intent would be frustrated unless "the final order" is interpreted to include final orders denying Rule 60(b) relief in habeas cases.

23

The more removed an attack is from the judgment responsible for the incarceration of a prisoner, the less likely the attack is to have merit; or, at the least, the less likely it is to have merit that matters. The Second Circuit phrased the same thought this way: "[I]t would be rather anomalous for Congress to have intended to screen out unmeritorious appeals from the denials of habeas corpus petitions and yet not have wished to apply this same screen to 60(b) motions seeking to revisit those denials." Kellogg, 269 F.3d at 103. Congress sometimes does anomalous things, but the language it used in § 2253(c)(1) does not persuade us that it intended to act in an anomalous and inconsistent way here.

While we respect the dissent's different view on the issue of whether certificates of appealability are required, we find the reasoning behind its view unpersuasive. To begin with, the dissent's criticism of our conclusion on this issue is based at least in part on a misunderstanding of it. The dissent says in Part IV that we are holding a petitioner must apply to this Court for leave to file his Rule 60(b) motion. Dissenting Op. at 113-14. Not so. Rule 60(b) motions must be filed in the district court, not in this Court, and nothing we say is intended to suggest anything to the contrary. Our conclusions have to do with the proper scope of Rule 60(b) motions in habeas proceedings and with whether a certificate of appealability is required to seek review of a district court's denial of one in a habeas proceeding.

24

We change nothing about where Rule 60(b) motions must be filed, which is in the district court. If the motion does not meet the requirements we outline today, the district court must deny it. If a petitioner wishes to appeal the denial of a Rule 60(b) motion aimed at a judgment denying habeas relief, he must obtain a certificate of appealability in order to do so.

The dissent's criticism that no Rule 60(b) motion could ever meet the standards set out for certificates of appealability in § 2253(c)(1) & (c)(2), which provides that they "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," is obviously unfounded. See generally Dissenting Op. Part IV. Our disposition of two of the cases in front of us proves how unfounded it is. We conclude in Part III of this opinion that two of the three petitioners are entitled to a certificate of appealability, and we issue each of them one. We do so applying guidance the Supreme Court provided us in Slack v. McDaniel, 529 U.S. 473, 120 S. Ct. 1595 (2000), which dealt with certificate of appealability applications to review procedurally based denials in habeas cases. That which is done is not impossible.

Furthermore, a central premise of the dissent's impossibility argument is that the decision of whether to issue a certificate of appealability must be confined to consideration of the debatability of a constitutional issue. It must be, the dissent

25

reasons, because the certificate of appealability standard is whether "the applicant has made a substantial showing of the denial of a constitutional right." See § 2253(c)(2). Appealing as it might otherwise be, that reasoning is at war with the Supreme Court's holding in the Slack case. Construing and applying the identical statutory language, the Court in Slack concluded that in deciding whether to issue a certificate of appealability to permit an appeal from the denial of a habeas petition on procedural grounds, courts must consider the debatability of the procedural ruling, and no certificate may be issued if the petitioner fails to make a substantial showing that the procedural ruling was wrong. 529 U.S. at 484, 120 S.Ct. at 1604. The dissent's position that the certificate of appealability standard cannot be applied to any non-constitutional questions will be news to the Supreme Court, because it is impossible to reconcile that position with the rule the Court announced in Slack.

The dissent's position that a certificate of appealability is never required to appeal the denial of Rule 60(b) relief in a habeas case is also contrary to the decisions of other circuits. The dissent attempts to distinguish most of the decisions of the other circuits that have addressed the issue and have concluded that a certificate of appealability is required to appeal a Rule 60(b) denial in a habeas case. It says that in those cases the Rule 60(b) motion was not a "true" one and for that reason was correctly denied by the district court. Dissenting Op. at 110. But that

26

attempted distinction will not wash. There is nothing in the language or purpose of § 2253(c) that distinguishes between Rule 60(b) motions based upon whether they are "true" ones or not. And the dissent never explains why the nature of the Rule 60(b) motion should determine whether a certificate of appealability is required to appeal from the denial of it.[3] The statutory language covers, and the certificate requirement applies, to all of them or to none. And the clear weight of authority, with which we agree, is that it applies to all of them.

Although the dissent attempts to distinguish much of the precedent against its position with the suggestion that the certificate of appealability requirement applies to the appeals of some but not all Rule 60(b) denials in habeas cases, the dissent's core position seems to be that the certificate of appealability requirement applies to no Rule 60(b) appeals at all.[4] For reasons that should be apparent, that position

---

[3] Going back to the singular versus plural question relating to § 2253(c)'s use of the term "the final order," the dissent's attempt to explain away the other circuits' authority massed against its position would mean that where the Rule 60(b) motion that is denied is a true one, "the final order" was used by Congress in the singular sense; where the motion denied is not a true one, it was used by Congress in the plural sense. See Dissenting Op. at 108-09. That bipolar construction does not make sense.

[4] We qualify our description of the dissent's position with "seems to be," because there is some inconsistency about this subject in its opinion. Part III.A of the dissenting opinion clearly asserts the position that the § 2253(c) requirement does not apply to appeals from the denial of any Rule 60(b) motions, because it pertains only to the first order denying habeas relief. Dissenting Op. at 109. Yet, in the very next part of the same opinion, the dissent attempts to reconcile its position with this Court's decision in Lindsey (requiring a certificate before an appeal from the denial of a Rule 60(b) motion in that habeas case) by at least implying that a certificate is required if the Rule 60(b) motion is not a true one. See Dissenting Op. Part III.B at page 112.

would reverse the rational order of things. As we have already explained, not applying the certificate requirement to a Rule 60(b) denial would make it easier to appeal the rejection of a collateral attack on the denial of habeas relief than it is to appeal the initial denial of habeas relief itself. It would defeat Congress' obvious intent that the certificate of appealability requirement be an important and effective tool to weed out unmeritorious appeals and bring about greater finality of judgment in habeas cases.

The dissent fails to face up to those inescapable and undesirable results of its position. It does not even attempt to explain why Congress would have wanted to cut out clearly non-meritorious appeals from the denial of habeas relief, while at the same time letting all clearly non-meritorious appeals from the subsequent denial of Rule 60(b) in habeas cases proceed to burden the appellate courts and undermine finality of judgment.

The burden would be significant. Under our position a single judge decides whether the appeal from a denial of Rule 60(b) relief has enough arguable merit to proceed – whether the issues it seeks to raise are debatable among jurists of reason. Under the dissent's position, a full-blown appeal with regular briefing and a decision on the merits by a three-judge panel would have to occur every time there is a Rule 60(b) denial in a habeas case and the petitioner elects to appeal. And

28

prisoners will almost always elect to appeal given all the free time on their hands. See Harris v. Garner, 216 F.3d 970, 978-79 (11th Cir. 2000) (en banc). The dissent would have the courts of appeal entertain and decide each of those appeals no matter how clearly non-meritorious it appeared from the outset, and no matter whether it was from the denial of the first or fifth or fifteenth Rule 60(b) motion the petitioner had filed. Congress could not have intended that.

For all of these reasons, we conclude that the certificate of appealability requirement applies not only to all final judgments denying § 2254 or § 2255 relief, but also to all final judgments denying Rule 60(b) relief from those earlier final judgments.[5]

## III.

The next question up is whether certificates of appealability should be issued in the three cases before us. Congress has provided that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that this means the petitioner must show "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a

---

[5] In Part IV of its opinion the dissent recasts our conclusions and the rules we announce. We reject that recasting, and we remind the reader that in any decision of this Court the law of the circuit is contained in the majority opinion, not in the dissenting opinion's description of it.

29

different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 3394 n.4 (1983)); accord Miller-El v. Cockrell, 537 U.S. 322, 335-36, 123 S. Ct. 1029, 1039 (2003).

The certificate of appealability requirement is to be administered at the threshold of the appeal, and deciding whether to issue one neither requires nor permits full consideration of the factual and legal merits of the claims, Miller-El at 336, 123 S. Ct. at 1039, because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate," id. at 342, 123 S. Ct. at 1042. That means a petitioner is not required to demonstrate entitlement to appellate relief in order to be given an opportunity to pursue it. Still, the certificate of appealability requirement is not a toothless one, and it should be applied with its purpose in mind, which is to separate out those appeals that deserve more careful attention from that do not. More than the absence of frivolity or the presence of good faith is required for a petitioner to clear this hurdle. Id. at 335-38, 123 S. Ct. at 1039-40.

Of particular relevance to the three cases we have before us, each of which involves Rule 60(b) procedural issues in addition to merits issues, is the Slack

30

decision. In that case the district court had denied the habeas petition on procedural grounds without reaching the underlying constitutional claim. Slack, 529 U.S. at 484, 120 S. Ct. at 1604. The Supreme Court held that in those circumstances a certificate of appealability should issue only if the petitioner makes both a substantial showing that he had a valid claim of the denial of a constitutional right, and a substantial showing that the procedural ruling is wrong. Id. at 484, 120 S. Ct at 1604. Those are the two components of the showing a petitioner in that situation must make in order to be entitled to a certificate of appealability. If either of the components is lacking, a court may deny the application for a certificate because of the absence of that component without deciding whether the other one exists. Id. at 485, 120 S. Ct. at 1604 ("Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments.").

## A.

With these principles in mind we turn to the specific cases. The easiest case in which to decide the certificate of appealability question is Lazo. The underlying constitutional claim in that case asserts that the indictment charging Lazo with conspiracy to possess with intent to distribute cocaine, and possession with intent to

31

distribute cocaine, was insufficient to give the district court subject matter jurisdiction because of its failure to allege an effect on interstate or foreign commerce, and its failure to provide Lazo with specific notice of the penalty he faced. There is no basis at all for those claims. An examination of the indictment, which is in the record before us, reveals that it is fully adequate in all respects. Lazo's contentions that the indictment is defective are not debatable among reasonable jurists. Because he has failed to make a substantial showing of the denial of a constitutional right, we deny him a certificate of appealability on that basis. We do so without reaching the procedural component of the required showing, which is whether any of the Rule 60(b) motion issues that his case gives rise to are debatable among jurists of reason.

B.

Gonzalez's claim is a different matter. He contends that his guilty plea was unintelligent, unknowing, and involuntary based upon specific evidence he has proffered. From the record before us, which does not contain a transcript of the guilty plea proceeding (there is some indication no transcript exists), we cannot say that Gonzalez's claim is not debatable among jurists of reason. Therefore, his appeal cannot be dispensed with at the certificate of appealability stage on the basis of the constitutional claim component.

As for the procedural component, Gonzalez must show that it is debatable among jurists of reason whether the intervening decision in <u>Artuz v. Bennett</u>, 531 U.S. 4, 121 S. Ct. 361 (2000), entitles him to Rule 60(b) relief from the prior judgment denying habeas relief on statute of limitations grounds. Rule 60(b) relief may not be available in these circumstances, but before we decide (a little later in this opinion) what standards apply in the post-AEDPA era to Rule 60(b) motions in habeas cases, we cannot say Gonzalez's position on that procedural issue is not debatable among jurists of reason. Accordingly, we will grant Gonzalez a certificate of appealability and proceed to a full consideration of his appeal.

In keeping with the dictates of § 2253(c)(3), we specify the issues on which the certificate is granted as being the last two for which we requested en banc briefing in this case: What standards are applicable to Rule 60(b) motions in § 2254 cases, and in light of those standards was it an abuse of discretion for the district court to deny the motion?

## C.

As in Gonzalez's case, so also in Mobley's case. His constitutional claim may lack merit, but we cannot say based upon the record before us that it is not debatable among jurists of reason. The same is true of the procedural issues arising from his case. Until we decide what standards apply to Rule 60(b) motions in

habeas cases, Mobley's position that he is entitled to relief from the judgment denying him habeas relief is debatable among jurists of reason. So he, too, gets a certificate of appealability, and it is one specifying the same two issues we specified for Gonzalez.

IV.

Having decided that the § 2253(c) certificate of appealability requirement does apply to appeals from denials of Rule 60(b) relief in habeas cases, and that a certificate of appealability ought to be issued in the Gonzalez and Mobley cases, we turn now to the third issue for which we granted en banc review.[6] What standards govern Rule 60(b) motions aimed at judgments in habeas proceedings, that is, when should those motions be granted?

A.

This question is critically important because of the consistent direction and the substantial extent to which limitations on second or successive petitions have evolved. The evolution has been toward greater finality of judgments through

---

[6] We offer this explanation about the way we are proceeding. We realize, of course, that our procedure for dealing with the cases we have before us does not follow the usual course in these matters. Ordinarily, whether to grant a certificate of appealability in a case is decided first, and if a certificate is granted full briefing on the issues specified in the certificate follows. In this en banc case, we have collapsed the briefing on the certificate of appealability issues with that about the proper scope of Rule 60(b) motions in § 2254 and § 2255 cases, because we determined that this is the most efficient way to decide all of the issues. The parties were given ample opportunity to fully brief and to argue all of the issues we decide here.

increasingly tight restrictions on second or successive petitions. We have gone from the days of the more permissive ends of justice and abuse of the writ standards, see, e.g., Sanders v. United States, 373 U.S. 1, 12, 83 S. Ct. 1068, 1075 (1963); to the post-McCleskey era with its less permissive cause and prejudice standard, see, e.g., McCleskey v. Zant, 499 U.S. 467, 493, 111 S. Ct. 1454, 1470 (1991); Sawyer v. Whitley, 505 U.S. 333, 338, 112 S. Ct. 2514, 2518 (1992); to the present post-AEDPA times, with a total ban on claims that were presented in a prior petition, § 2244 (b)(1), and a near-total ban on those that were not, see § 2244(b)(2).

The central purpose behind the AEDPA was to ensure greater finality of state and federal court judgments in criminal cases, and to that end its provisions greatly restrict the filing of second or successive petitions. The Supreme Court and this Court have made these points many times before. See Miller-El v. Cockrell, 537 U.S. 322, 337, 123 S. Ct. 1029, 1039-40 (2003) ("Statutes such as AEDPA have placed more, rather than fewer, restrictions on the power of federal courts to grant writs of habeas corpus to state prisoners."); Tyler v. Cain, 533 U.S. 656, 661, 121 S. Ct. 2478, 2481-82 (2001) ("AEDPA greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications."); Williams v. Taylor, 529 U.S. 420, 436, 120 S. Ct. 1479, 1490 (2000) ("AEDPA's purpose [is] to further the principles of comity, finality, and

federalism"); Calderon v. Thompson, 523 U.S. 538, 558, 118 S. Ct. 1489, 1502 (1998) ("AEDPA's central concern [is] that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence."); Johnson v. United States, 340 F.3d 1219, 1224 (11th Cir. 2003) ("It is generally accepted that one of the principal functions of AEDPA was to ensure a greater degree of finality for convictions."); Jones v. United States, 304 F.3d 1035, 1039 (11th Cir. 2002) ("A fundamental purpose for the AEDPA was to establish finality in post-conviction proceedings.").

That central purpose of the AEDPA and its provisions specifically restricting the filing of second or successive petitions severely limit the application of Rule 60(b) to habeas cases. Rule 11 of the Rules Governing § 2254 Cases provides that the Federal Rules of Civil Procedure "may be applied, when appropriate" in habeas proceedings, but only "to the extent that they are not inconsistent with these rules." Rule 11, 28 U.S.C. fol. § 2254. Given that the habeas rules trump the civil ones to the extent of any inconsistency, it certainly follows that statutory provisions governing habeas proceedings also trump general civil rule provisions that are inconsistent, and that is especially true of subsequently enacted statutory provisions such as those in the AEDPA. The civil rules themselves explicitly recognize as much by providing that they are applicable to habeas corpus proceedings only "to

36

the extent that the practice in such proceedings is not set forth in statutes of the United States" or in the habeas rules. Fed. R. Civ. P. 81(a)(2).[7]

There's a different way of explaining the same point. Congress allowed Rule 60(b) to be created through the Rules Enabling Act process, see generally, 28 U.S.C. §§ 2071-2077, by not exercising its legislative authority to veto or modify that rule, see § 2074. Congress can supercede Rule 60(b) or any other rule promulgated through the rules process by actively asserting its legislative authority to enact provisions that govern procedure. The AEDPA with its restrictions on the filing of second or successive petitions, see 28 U.S.C. § 2244(b), is an example of Congress doing that to some extent.

Regardless of how one explains it, if the earlier adopted rule is inconsistent with the later enacted statutory provision, the rule yields to the statute to the extent of the inconsistency. And unless its operation is throttled back in habeas cases, Rule 60(b) is inconsistent with § 2244(b). Applying Rule 60(b) full throttle to final judgments in habeas cases would essentially repeal the later-enacted AEDPA

---

[7] The habeas rules, too, will soon explicitly recognize the obvious point that the civil rules do not apply to habeas proceedings to the extent that they are inconsistent with any statutory provision. The Judicial Conference has approved and recommended to the Supreme Court a revision of the habeas rules, which includes the following restyled Rule 12: "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provision or these rules, may be applied to a proceeding under these rules." Proposed Amendments to Proceedings under 28 U.S.C. § 2255 (emphasis added). The accompanying committee note states that the change is intended to be stylistic only and that no substantive change is being made. Id.

provisions restricting second or successive petitions. The rule's provisions are broadly worded and permit judgments to be reopened "upon such terms as are just" for any number of reasons, including to correct a mistake, to undo the result of inadvertence, or to remedy excusable neglect, Fed. R. Civ. P. 60(b)(1); or because of newly discovered evidence, Fed. R. Civ. P. 60(b)(2); or for "any other reason justifying relief from the operation of the judgment," Fed. R. Civ. P. 60(b)(6).[8] The latitude that the rule gives courts to reopen final judgments is frequently described as a "broad discretion." See, e.g., Bennett v. Dr. Pepper/Seven Up, Inc., 295 F.3d 805, 807 (8th Cir. 2002) ("We will reverse a district court's ruling on a Rule 60(b) motion only if there was a clear abuse of the court's broad discretion."); Marquip, Inc. v. Fosber America, Inc., 198 F.3d 1363, 1369 (Fed. Cir. 1999) ("[T]his court detects no abuse of the district court's broad discretion to apply Rule 60(b).");

---

[8] Rule 60(b) provides that the court may relieve a party from a final judgment, order or proceeding:

> for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

The motion must be made "within a reasonable time," and for reasons (1), (2), and (3), "not more than one year after the judgment, order, or proceeding was entered or taken." Fed. R. Civ. P. 60(b).

Hoult v. Hoult, 57 F.3d 1, 3 (1st Cir. 1995) ("We note at the outset that district courts enjoy broad discretion in deciding motions brought under Rule 60(b)."); Lee v. Village of River Forrest, 936 F.2d 976, 979 (7th Cir. 1991) ("A trial judge has broad discretion to grant Rule 60(b) relief from judgment.").

Most of the provisions of Rule 60(b), which vest courts with broad discretion to reopen judgments on a wide variety of grounds, are inconsistent and irreconcilable with the AEDPA's purpose, which is to "greatly restrict[] the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications," Tyler v.Cain, 533 U.S. at 661, 121 S. Ct. at 2481-82, and with its "central concern that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence," Calderon, 523 U.S. at 558, 118 S. Ct. at 1502. Consider, for example, Rule 60(b)(2), which permits the reopening of a final judgment based upon newly discovered evidence. If that rule were applied in habeas cases it would effectively erase from the books the more recent and more specific statutory requirement that final judgments denying habeas relief not be reopened or set aside because of newly discovered evidence, unless "the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense,"

§ 2244(b)(2)(B)(ii). And Rule 60(b)(1), which permits a court to reopen a final judgment to undo a litigation loss that resulted from "mistake, inadvertence, surprise, or excusable neglect," would have the same vitiating effect.

No part of the rule, if it were applied to habeas cases, could do more harm to the finality of judgments and the interests protected by the AEDPA than Rule 60(b)(6) which permits reopening a final judgment for "any other reason justifying relief from the operation of the judgment." As Judge Tjoflat has explained, limiting the operation of Rule 60(b)(6) in habeas cases is critically important, because "[a] district court that uses this 'catch-all' provision to allow a habeas corpus petitioner to obtain review of a new constitutional claim will . . . eviscerate the provisions of AEDPA." Mobley, 306 F.3d at 1101 n.3 (Tjoflat, J., dissenting).

The discretion to reopen final judgments contemplated in most of the provisions of Rule 60(b) cannot co-exist in a habeas case with § 2244(b). That statutory provision, whose second or successive petition restrictions are "grounded in respect for the finality of criminal judgments," Calderon, 523 U.S. at 558, 118 S. Ct. at 1502, explicitly forbids setting aside final judgments denying habeas relief except in rare circumstances that fit within the two narrow exceptions contained in that statutory provision. The severe restrictions on revisiting final judgments that

are contained in § 2244(b) are virtually the antithesis of the broad discretion that Rule 60(b) generally gives district courts to reopen them.

We reject, because Congress in enacting the AEDPA has rejected, any notion that habeas proceedings are just another category of civil cases for purposes of Rule 60(b). Or, to put it in terms of the Federal Rules of Civil Procedure themselves, we conclude that insofar as reopening final judgments in habeas cases is concerned, "the practice in such proceedings is [] set forth in statutes of the United States," see Fed. R. Civ. P. 81(a)(2), and specifically in § 2244(b).

That means Rule 60(b) cannot and does not apply in habeas cases the way it does in ordinary civil cases, but it does not necessarily mean that no aspect of the rule has any relevance to habeas cases. It may have some limited role to play in habeas cases; that is, there may be some aspect of Rule 60(b) that is not inconsistent with the AEDPA. For guidance about what limited role Rule 60(b) might play in habeas cases we look to the Supreme Court's Calderon decision, which involves the closest analogy (the recall of appellate mandates in habeas cases) we can find and provides some compelling reasoning.

B.

The Calderon case had a lengthy procedural history, but the relevant part of it for our purposes began after a panel of the Ninth Circuit reversed a district court's

41

grant of habeas relief as to the rape-murder conviction and death sentence of the petitioner, Thomas Thompson. The district court had granted that relief after concluding that Thompson had suffered from ineffective assistance of counsel, but the panel disagreed. See Calderon, 523 U.S. at 544-46, 118 S. Ct. at 1495-96. After rehearing en banc was denied, the appellate mandate directing the district court to deny all relief was issued. Id. at 546, 118 S. Ct at 1496.

Thompson then brought forward new evidence that there had been no rape; he had found a witness who would testify to having seen the victim engaged in what appeared to be consensual sex with Thompson on the night she was murdered. Thompson filed in the court of appeals a motion to recall the mandate, and the next day he filed in the district court a Rule 60(b) motion to set aside the judgment denying him habeas relief that had been entered in obedience to the appellate court's mandate. Both motions were based on the new evidence that there had been no rape because the sex had been consensual. Id.

In denying Thompson's Rule 60(b) motion, the district court construed it to be a successive petition under § 2244, and explained that "Thompson 'must not be permitted to utilize a Rule 60(b) motion to make an end-run around the [statutory] requirements'" of the AEDPA governing second or successive petitions. Id. at 547, 118 S. Ct. at 1496. Even with his new witness, in view of the other evidence

against him, Thompson could not show that he was actually innocent so that his execution would be a miscarriage of justice. Id. at 547, 118 S. Ct. at 1496-97.

The Ninth Circuit panel denied Thompson's motion to recall the appellate mandate, but two days before he was scheduled to be executed the en banc court voted to recall the mandate, which had been issued 53 days earlier. Id. at 547-48, 118 S. Ct at 1497. The en banc court did so not on the basis of the new evidence asserted in Thompson's motion to recall, but instead acted sua sponte based solely on the claims and evidence that had been presented in his first habeas petition, the one that had led the district court to grant relief originally only to be reversed by the panel. The en banc court gave two reasons for recalling the mandate.

One reason was that rehearing en banc would have been granted before the mandate issued but for procedural misunderstandings and mistakes within the court itself. The other reason was that the panel's decision reversing the grant of habeas relief "would lead to a miscarriage of justice." Id. at 548, 118 S. Ct. at 1497. The miscarriage of justice the en banc court perceived was that the panel decision was wrong. It held that Thompson had been denied effective assistance of counsel and directed the district court to issue the writ on that ground. In doing so, the en banc court made no effort to determine if Thompson was actually innocent of the crime. Id. at 548-49, 118 S. Ct. at 1497.

The Supreme Court reversed the en banc Ninth Circuit's decision. In doing so, the Court acknowledged that generally the power of a court of appeals to recall its mandate is inherent and unquestioned. Id. at 549-50, 118 S. Ct. at 1498. Habeas cases, however, are different, and that difference matters when it comes to reopening final judgments. The Calderon opinion explains that because of "the profound societal costs that attend the exercise of habeas jurisdiction," the Court had "found it necessary to impose significant limits on the discretion of federal courts to grant habeas relief." Id. at 554-55, 118 S. Ct. at 1500. Among the examples given in the opinion are the limitations the Court had imposed on the ability of lower courts to consider second petitions, to consider procedurally defaulted claims, and to consider claims that are based upon new decisional law. Id.

Underlying those limitations imposed by its decisions is what the Supreme Court characterized as "our enduring respect for the State's interest in the finality of convictions that have survived direct review within the state court system." Id. at 555, 118 S. Ct. at 1500 (citations and marks omitted). Finality of judgment is of critical importance to our criminal justice system, the Court explained, because finality is "essential to both the retributive and the deterrent functions of criminal law," it "enhances the quality of judging," and it "serves as well to preserve the federal balance." Id. at 555, 118 S. Ct. at 1501.

The interest in finality of judgment, which is of considerable importance when state review of a conviction and sentence has been completed, becomes truly compelling, in the Supreme Court's view, after a federal court of appeals has issued a mandate denying habeas relief. At that point, the State is entitled not simply to an assurance of finality but, to use terms from the Calderon opinion, to "real finality" or "actual finality." Id. at 556-57, 118 S. Ct. at 1501-02. Because mandate recalls threaten that entitlement and the critical interests that underlie it, their field of permissible use is severely restricted in habeas cases.

Or, as the Supreme Court said, when judging the propriety of any exercise of the power to recall a mandate, "we measure it not only against standards of general application, but also against the statutory and jurisprudential limits applicable in habeas corpus cases." Id. at 553, 118 S. Ct. at 1499. Of course, the most relevant statutory limits are those in § 2244(b) which stringently restrict consideration of second or successive petitions. Because what the Court said about the application of those provisions to mandate recall motions bears so directly on Rule 60(b) motions in habeas cases, it is worth a block quote:

> In a § 2254 case, a prisoner's motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b). Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application, § 2244(b)(1), or the bar against litigation of claims not presented in a prior application, § 2244(b)(2). If the court grants such a motion, its

45

action is subject to AEDPA irrespective of whether the motion is based on old claims (in which case § 2244(b)(1) would apply) or new ones (in which case § 2244(b)(2) would apply).

Id. at 553, 118 S. Ct. at 1500. That would have been the end of the case, if the mandate recall in Calderon had come as a result of the petitioner's motion. See id. at 562, 118 S. Ct. at 1504 ("Had [the en banc court] considered the additional evidence or claims presented in Thompson's motion to recall the mandate, of course, its decision would have been subject to § 2244(b).").

More analysis was required in that case, however, because of a procedural wrinkle: The en banc Ninth Circuit had insisted that it did not recall the mandate based upon anything contained in Thompson's motion, but instead coincidentally recalled its mandate sua sponte based solely upon the claims contained in the original habeas petition and the evidence that had been presented in support of that petition. Id. at 548, 554, 118 S. Ct. at 1497, 1500. This procedural wrinkle potentially mattered because the text of § 2244(b) covers only court action pursuant to a petitioner's application. See id. at 554, 118 S. Ct. at 1500; see also § 2244(b)(1) ("A claim presented in a second or successive habeas corpus application . . . ."); § 2244(b)(2) ("A claim presented in a second or successive habeas corpus application . . . .").

46

Because the recall of the mandate had not been based upon Thompson's motion and the en banc court had not considered anything contained in that motion in making its decision, the Supreme Court acknowledged that the terms of § 2244(b) did not govern the peculiar circumstances of that specific mandate recall. Id. at 554, 118 S. Ct. at 1500. It made little difference that § 2244(b) technically did not apply, however, because the Supreme Court held that even where a post-judgment situation does not fit within the actual terms of the AEDPA, a court "must exercise its discretion in a manner consistent with the objects of the statute," and "the court must be guided by the general principles underlying our habeas corpus jurisprudence." Id. Guided by those principles and with an eye on the objects of the AEDPA, the Court concluded that even though sua sponte mandate recalls are not within the literal terms of the statute, none should be granted unless necessary to prevent a miscarriage of justice, as that term is defined in the pre-AEDPA habeas corpus jurisprudence. Id. at 557-58, 118 S. Ct. at 1502.[9]

_____

[9] The Supreme Court drew the actual innocence standard it announced for sua sponte mandate recalls from its decision in Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851 (1995), instead of using the one contained in § 2244(b)(2)(B). See Calderon, 523 U.S. at 559-60, 118 S. Ct. at 1502-03. There are some differences between the two standards. For example, under the Schlup formulation when the constitutionality of the conviction is at issue because of new evidence, the standard is whether "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327, 115 S. Ct. at 867, quoted in Calderon, 523 U.S. at 559, 118 S. Ct. at 1503. By contrast, under § 2244(b)(2)(B) the standard is whether it has been established "by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the petitioner guilty of the underlying offense."

47

The miscarriage of justice standard is appropriate in that situation, the Court reasoned, because it "comports with the values and purposes underlying AEDPA," even though the AEDPA provisions did not literally apply in that case because the en banc court action had not been based upon the petitioner's motion. Id. at 558, 118 S. Ct. at 1502. The miscarriage of justice standard was recognized by the Court to be "altogether consistent . . . with AEDPA's central concern that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence." Id. Actual factual innocence is required; legal innocence is not enough. It is a narrow and well-defined exception that will rarely be found to exist. Id. at 559, 118 S. Ct. at 1502-03.

## C.

The lessons about reopening a final habeas judgment that we draw from the Calderon decision and opinion are that Rule 60(b) relief should not be granted from a judgment denying habeas relief unless a demanding standard is met, and which of two demanding standards applies depends on whether the recall results from a motion made by the petitioner or is done on the court's own initiative. If the recall is based on a motion by the petitioner, that motion is the functional equivalent of a second or successive petition and the terms of the AEDPA's § 2244(b) apply regardless of the label put on it. If, on the other hand, a court of appeals is

48

considering recalling the mandate on its own motion the literal terms of § 2244(b)

do not apply, but the mandate cannot be recalled unless necessary to prevent a

miscarriage of justice; that means the petitioner must be factually innocent of the

crime, or of the sentence, as defined in the pre-AEDPA federal habeas

jurisprudence, see n.9, above.

The Supreme Court in Calderon indicated that only two exceptions apply to

the rule that the final judgment in a habeas case may not be reopened by a recall of

the mandate unless the demanding standard that applies is met.  One exception is

that the mandate may be recalled to correct a mere clerical error in the judgment. Id.

at 557, 118 S. Ct. at 1501.  The other exception is that the mandate may be recalled

where there was "fraud upon the court, calling into question the very legitimacy of

the judgment." See id. at 557, 118 S. Ct. at 1501-02.  Neither situation was present

in the Calderon case, nor did the petitioner meet the demanding standard (actual

innocence) that applied there.  As a result, the judgment of the Ninth Circuit en

banc court recalling the mandate and affirming the grant of federal habeas relief to

Thompson was reversed.  Id. at 566, 118 S. Ct. at 1506.

D.

Calderon's lessons about whether and when an appellate court's power to

recall a mandate may be used in habeas cases apply with as much force to the

question of whether and when a trial court's Rule 60(b) authority to reopen a final judgment may be used in a habeas case. Recalling the mandate to reopen and alter the final judgment in a habeas case is the closest thing on the appellate level to the use of Rule 60(b) to reopen and change a final judgment at the trial level. The unfettered application of either procedure to reopen final judgments in habeas cases would undermine important principles and values protected by the restrictions contained in habeas decisional law and the AEDPA.

The Supreme Court emphasized in Calderon "our enduring respect" for a state's interest in the finality of a judgment that has survived review within the state system, and it stressed that finality of judgments is essential to the proper functioning of the criminal justice system and to preservation of the federal balance. Calderon, 523 at 555-56, 118 S. Ct. at 1500-01. Our enduring respect for the interests behind finality of criminal judgments, and our understanding that finality is essential to criminal justice and to our federal system, does not vary depending on whether the threat to finality comes from a motion to recall the mandate or from a Rule 60(b) motion. When a federal appellate court has issued a mandate denying habeas relief, the state's interests in finality of a judgment of its courts are no less "compelling," id. at 556, 118 S. Ct. at 1501, and its entitlement to "real finality" and "actual finality" is not diminished simply because the petitioner's attempt to reopen

50

the judgment is wrapped in Rule 60(b) packaging instead of mandate recall paper. The interests threatened and the importance of those interests are the same regardless of whether the attack comes at the district court or appellate level. A reopened judgment is a reopened judgment.

Two differences between Rule 60(b) relief and mandate recalls come to mind, but neither weighs in favor of permitting the former to undermine finality of criminal judgments any more than the latter. One difference is that the procedure for obtaining relief from a judgment at the district court level is set out in Rule 60(b), while there is no comparable Federal Rule of Appellate Procedure that sets out the procedure for recalling a mandate once it has issued, see generally Fed. R. App. P. 41(governing mandates). Rule 60(b), however, provides only the procedural framework, while the substantive law governing relief from judgments at the trial level is supplied by decisional law, see Fed. R. Civ. P. 60(b) advisory committee's note ("It should be noted that Rule 60(b) does not assume to define the substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief."), just as the substantive law applicable to mandate recalls is to be found in court decisions, see Calderon, 523 U.S. at 549-50, 118 S. Ct. at 1498 ("the courts of appeals are recognized to have an inherent power to recall their mandates, subject to review for an abuse of discretion"). So, there is

51

no real difference in that respect. And in any event, Rule 60(b) is itself subject to the limitation of Rule 81(a)(2), which provides that the rule does not apply to habeas corpus proceedings to the extent that the practice in them is set forth in statutes, and the AEDPA is such a statute.

The other difference between Rule 60(b) relief and mandate recalls is that an appellate court generally has less discretion to reopen judgments by recalling its mandate than a district court has to reopen them under Rule 60(b). Compare Calderon, 523 U.S. at 549-50, 118 S. Ct. at 1498 (power to recall mandate to be exercised only in extraordinary circumstances) with Bennett, 295 F.3d at 807 (describing a district court's authority to grant Rule 60(b) motions as one involving "broad discretion"); Marquip, Inc., 198 F.3d at 1369 ("the district court's broad discretion to apply Rule 60(b)"); Hoult, 57 F.3d at 3 ("district courts enjoy broad discretion in deciding motions brought under Rule 60(b)"); Lee, 936 F.2d at 979 ("A trial judge has broad discretion to grant Rule 60(b) relief from judgment."). However, that difference shows there is even more need to restrict the use of Rule 60(b) in habeas cases, because the broader the discretion to upset final judgments, the greater the threat to the finality interests that drove the Supreme Court's decision in Calderon. Everything the Supreme Court said about why mandate recalls must be given a more restricted role in habeas cases than in other cases

applies in at least equal, and perhaps greater, measure to reopening judgments under Rule 60(b).

For all of these reasons, a Rule 60(b) motion at the trial level is the equivalent, for all present intents and purposes, of a motion to recall the mandate at the appellate level. See Burris v. Parke, 130 F.3d 782, 783 (7th Cir. 1999) ("Appellate courts agree that a post-judgment motion under Fed. R. Civ. P. 60(b) in the district court, or the equivalent motion in the court of appeals – which is to say, a motion to recall the mandate – is a 'second or successive' application for purposes of § 2244(b)."). That is why it is no surprise that the two often travel together. In Calderon one day the petitioner filed in the appellate court a motion to recall the mandate, and the next day he filed in the district court a Rule 60(b) motion containing the same grounds and allegations. Calderon, 523 U.S. at 546, 118 S. Ct. at 1496. In the Mobley case that we have before us now, the petitioner filed in this Court his motion to recall the mandate on the same day he applied to us for a certificate of appealability to appeal the district court's denial of his Rule 60(b) motion, and both of those attacks on the final judgment denying him habeas relief were based on the same ground and allegations. Mobley, 306 F.3d at 1099-1100.

To a petitioner it does not matter whether he gets the final judgment against him reopened through a mandate recall or through a Rule 60(b) motion. To the

State it does not matter, because the injury to its interests is the same regardless of which procedural weapon is used to inflict the wound. To us it should not matter which procedure is used, either; in habeas cases both should be governed by the same principles and be subject to the same restrictions.

We conclude that those principles which were discussed, and those restrictions which were set out, by the Supreme Court in <u>Calderon</u> apply to attempts to reopen final judgments under Rule 60(b). That means in a § 2254 case a petitioner's Rule 60(b) motion to reopen the judgment "can be regarded as a second or successive application for purposes of § 2244(b)," and should be so regarded because "[o]therwise, petitioners could evade the bar against relitigation of claims presented in a prior application, or the bar against litigation of claims not presented in a prior application." <u>Calderon</u>, 523 U.S. at 553, 118 S. Ct. at 1500 (citations omitted). Because a petitioner's attempt to reopen a final habeas judgment pursuant to Rule 60(b) is to be treated as an application to file a second or successive petition, it ordinarily should be dismissed by the district court pursuant to § 2244(b)(4).[10]

---

[10] In <u>Castro v. United States,</u> ___ U.S. ___, 124 S. Ct. 786 (2003), the Supreme Court held that when faced with a motion by a <u>pro se</u> federal prisoner that is not labeled as a § 2255 motion, a district court cannot without more recharacterize the motion as one under § 2255. The court must inform the prisoner that the recharacterization being contemplated will subject his subsequent filings to the restrictions on second or successive filings, and it must provide him with an opportunity to amend or withdraw the initial filing. If the court does not do that, the recharacterized filing cannot be counted as a § 2255 motion for purposes of applying the

Of course, if the grounds of relief stated in the Rule 60(b) motion satisfy the stringent requirements of § 2244(b)(1) & (2), the petitioner should put those grounds in a habeas petition and move under § 2244(b)(3)(A) for an order from the court of appeals authorizing the district court to consider it. The point of the rule we announce today is that the petitioner may not get around the statutory restrictions on second or successive petitions by filing a Rule 60(b) motion, unless the grounds of the motion fit within one of the two exceptions we are about to discuss. [11]

### E.

Because the <u>Calderon</u> reasoning does apply to Rule 60 motions as well as mandate recalls in habeas cases, the two extra-statutory exceptions discussed in that

---

restrictions against second or successive motions. <u>Id.</u> at ___, 124 S. Ct. at 792.

That is not what we have here. None of the prisoners before us had his initial filing recharacterized by the district court. All their initial pleadings were filed under § 2254 or § 2255, were labeled as such by the prisoner, and were treated by the court accordingly. The <u>Castro</u> decision does not extend beyond initial filings, and nothing the Supreme Court said or did in that case implies that the § 2244(b) restrictions can be evaded by the simple expedient of labeling second or successive filings to be something they are not.

[11] Nor may a petitioner circumvent the restrictions on second or successive petitions by the simple expedient of filing an independent action aimed at the judgment denying habeas relief. <u>See generally</u> Fed. R. Civ. P. 60(b) (3d sentence). All of the reasoning and all of the principles we have been discussing apply fully to any independent action designed to set aside or reopen a judgment denying federal habeas relief. Accordingly, such independent actions are subject to the § 2253(c) requirement that a certificate of appealability be obtained before the denial of one may be appealed, and relief from a judgment denying a habeas petition may not be granted in an independent action except in the two circumstances we are about to discuss in which relief may be granted on a Rule 60(b) motion.

55

decision also apply. This means that there are two different circumstances or exceptions in which a petitioner will be permitted to file a Rule 60 motion and have it treated by the district court as a motion under that rule instead of as a non-authorized (by the appellate court pursuant to § 2244(b)(3)(A)) application to file a second or successive petition.

One circumstance is where the final judgment is recalled or reopened to correct clerical errors in the judgment itself. As the Supreme Court explained, "[t]he State can have little interest, based on reliance or other grounds, in preserving a mandate not in accordance with the actual decision rendered by the court." Id. at 557, 118 S. Ct. at 1501. The same is true, of course, when a judgment is reopened under Rule 60(a) to correct a mere clerical mistake. So, there is that exception.

The other circumstance in which a petitioner will be able to file a Rule 60 motion and have it treated by the district court as a motion under that rule instead of as a non-authorized second or successive petition is where there was fraud upon the federal court which led to the denial of the habeas petition. In its Calderon opinion, the Supreme Court said: "This also is not a case of fraud upon the court, calling into question the very legitimacy of the judgment. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S. Ct. 997 (1944)." Calderon, 523 U.S. at 557, 118 S. Ct. at 1501-02. It is unclear whether with those words (contained in a

paragraph which begins "We should be clear about the circumstances we address in this case . . . .") the Court meant to recognize a fraud exception or simply to reserve for later the question of whether that exception exists. Since we have before us one petitioner who contends that he is entitled to the benefit of a fraud exception, we cannot put off until another day the decision of whether one exists. We think it does.

A State's interest in the finality of a judgment denying federal habeas corpus relief is not compelling if that judgment would not have been obtained but for fraud that its agents perpetrated upon the federal court. Rule 60(b)(3) permits a judgment to be reopened for fraud, and the savings clause of the rule specifies that it does not "limit the power of a court . . . to set aside a judgment for fraud upon the court." To that extent, Rule 60(b) has a field of operation in habeas cases. The exact parameters of the fraud exception may have to be worked out on a case-by-case basis, but the Supreme Court's citation to the Hazel-Atlas decision in its Calderon opinion, 523 U.S. at 557, 118 S. Ct. at 1501-02, is instructive. (The Hazel-Atlas decision is cited by the commentary to Rule 60(b) as an illustration of a situation involving a fraud perpetrated upon a court. See Fed. R. Civ. P. 60(b) advisory committee's note.)

In the Hazel-Atlas case the Hartford Company had been unsuccessful in its efforts to obtain a patent for a particular way of pouring glass into molds, called the "gob feeding" method. Its application faced "apparently insurmountable Patent Office opposition." Hazel-Atlas, 322 U.S. at 240, 64 S. Ct. at 998. To overcome that opposition, a lawyer for the company, with his client's knowledge and assistance, drafted an article for publication in a trade journal that described the gob feeding method as "a remarkable advance in the art of fashioning glass by machine," and "one of the two 'revolutionary devices' with which workmen skilled in bottle-blowing had been confronted since they had organized." Id. at 240-41, 64 S. Ct. at 998-99. The fraud in the fraudulent scheme was passing off the overblown advocacy penned by Hartford's attorney as a fact-based testimonial independently written by a disinterested expert in the field. That was accomplished by having the head of a national union of glass blowers sign the article as its purported author even though he had nothing to do with writing it. Id.

The phony article was published, and it had the intended effect. After the article was pointed out to the Patent Office, it issued Hartford a patent for the process. Hartford then filed a patent infringement suit against Hazel-Atlas, which was using that method to produce glass. Hartford did not emphasize the bogus article to the district court, and that court ruled against it. Id. at 241, 64 S. Ct. at

58

999. In the court of appeals the attorneys for Hartford, one of whom had been involved in the spurious article scheme, directed the court's attention to the article, and as the Supreme Court put it, "[t]he reference was not without effect." Id. In reversing the district court and directing that judgment be entered in favor of Hartford, the court of appeals quoted copiously from the article to support its holdings that the district court had erred, that the patent was valid, and that there had been infringement. Id.

Despite Hartford's payment of hush money to the national union leader who had signed the phony article, the fraud was ultimately discovered years after the judgment that it had been used to procure had become final (finality of judgment being defined by the term rule, in those days). The court of appeals refused to set aside its judgment in favor of Hartford, but the Supreme Court reversed. After recounting "this sordid story," Id. at 243, 64 S. Ct. at 1000, the Court held that the term rule was no bar to correcting the effect of the fraud, that Hazel-Atlas' delay in uncovering the fraud was not a bar, and that the effectiveness of the fraudulent article for Hartford's case in the court of appeals could not be disputed. Id. at 244-47, 64 S. Ct. at 1000-02.

The Supreme Court explained in Hazel-Atlas that, "[t]his is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-

59

discovered evidence, is believed possibly to have been guilty of perjury," but instead was "a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals." Id. at 245-46, 64 S. Ct. at 1001. The court of appeals decision was reversed with directions for it to recall the original mandate it had issued years before, to issue a new mandate directing the district court to set aside the judgment in favor of Hartford, and to take any additional action that was necessary and appropriate. Id. at 251, 64 S. Ct. at 1004.

That case is the example the Supreme Court gave in Calderon of the kind of fraud which justifies upsetting the finality interests that arise when a State criminal judgment has been left standing after a full round of federal habeas review. Calderon, 523 U.S. at 557, 118 S. Ct. at 1501-02. With that and the other teachings of the Calderon decision in mind, we will turn to the particular circumstances of the two § 2254 cases before us, but before doing so we pause to consider the competing approach the dissent would have us adopt.

The dissent's functional inquiry, as we understand it, is adopted from the First Circuit's opinion in Rodwell v. Pepe, 324 F.3d 66, 70 (1st Cir. 2003), which ignores the Supreme Court's Calderon decision. Although the critically important Calderon decision had been on the books for five years before the First Circuit released its Rodwell opinion, that opinion does not even mention the Supreme

60

Court decision.  Uninformed by <u>Calderon</u>, the First Circuit's approach requires a court to determine in every case where a Rule 60(b) is filed seeking to set aside a habeas judgment whether the motion's factual predicate "deals primarily with the constitutionality of the underlying state [or federal] conviction or sentence," or "deals primarily with an irregularity or defect in the procurement of the judgment denying habeas relief." Dissenting Op. at 103 (quoting <u>Rodwell</u>, 324 F.3d at 70) (alterations added by dissent).  What exactly "deals primarily" means as it applies to the myriad of factual predicates arising in these type of cases would, of course, be subject to continuous debate and litigation.   As a result, the states would be denied the "real finality" or "actual finality" of judgment the Supreme Court says they are entitled to have. <u>Calderon</u>, 523 U.S. at 556-57, 118 S. Ct. at 1501-02.[12]

---

[12] The fuzziness of the test the dissent would have us adopt is illustrated by the inconsistent way the dissent apparently would apply it in two materially identical circumstances. The dissent discusses our pre-AEDPA decision of <u>Lindsey v. Thigpen</u>, 875 F.2d 1509, 1512 (11th Cir. 1989), without concluding that decision was wrong to apply the certificate requirement to an appeal by a petitioner who had unsuccessfully sought Rule 60(b)(6) relief from the district court on two grounds.  One of those grounds was that the controlling law applicable to a claim he had raised in his initial petition, which was denied, had been changed in a decisive way by an intervening Supreme Court decision.  See Dissenting Op. at 112. That attempt by Lindsey to get a judgment denying habeas relief set aside because of a change in the law is seen by the dissent as  one of those "misuses of Rule 60(b)." <u>Id.</u> at 113.  Yet, when it comes to Gonzalez's attempt to use the same rule to get a judgment denying habeas relief set aside because of a change in controlling law, the dissent tells us that "Rule 60(b) is the perfect vehicle for invoking the change-in-the-law exception to the mandate rule." <u>Id.</u> at 129.  Rule 60(b), we are assured, is "tailor made for this situation." <u>Id.</u>  Use of the rule is seen as non-fitting and even abusive in a situation involving a change in the controlling law in one case, while use of the same rule is seen as just perfect in another case involving a change in the controlling law.

61

Nodding slightly to that inevitable consequence, the dissent drops a footnote to assure us that it would emphasize to district courts that when applying Rule 60(b)(6) – only one of the six subdivisions of the broadly worded rule – they are to exercise "special caution" in order to avoid eviscerating the provisions of § 2244. See Dissenting Op. at 103 n.20. We are not assured.

Special caution is difficult to define and impossible to police in the fuzzy area of debating whether the factual predicate of a motion "deals primarily" with the constitutionality of the underlying judgment, or "deals primarily" with some irregularity or defect in the previous judgment denying relief from that earlier judgment. The same is true about "special caution" in determining how to exercise the broad discretion that district courts are given to decide whether to set aside judgments on such grounds as "mistake, inadvertence, surprise, or excusable neglect," Rule 60(b)(1), and because of "newly discovered evidence," Rule 60(b)(2), as well as for "any other reason justifying relief from the operation of the judgment," Rule 60(b)(6).

In sum, the Supreme Court had good reasons for recognizing in Calderon that the nature of habeas cases and the critical importance of the finality and comity interests they affect require special rules for motions to recall the mandate in them, and for insisting that lower courts abide by those rules. The same is true of the trial

level analog of a motion to recall the mandate in a habeas appeal, which is the Rule 60(b) motion to re-open a judgment denying habeas relief. Besides, Calderon is a Supreme Court decision, so we must follow it regardless of whether we would have arrived at a different approach. The dissent's quarrel is really with the Supreme Court's Calderon decision.

## V.

We now apply the lessons we have derived from Calderon, along with the two exceptions that decision recognized, to the two habeas cases remaining before us.

A.

Gonzalez does not contend that there was any clerical error in the final judgment denying him federal habeas relief, or that fraud was used to obtain that judgment. His sole contention is that the judgment was wrong, because the subsequently released decision in Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361 (2000), shows that the "properly filed" language of § 2244(d)(2) was misinterpreted to deny him relief. He is attacking the merits of that decision – the term "merits" referring to the correctness of the decision itself even though the ground of this particular decision was the statute of limitations, an affirmative defense.

Gonzalez's Rule 60(b) motion is an attempt to relitigate a claim that has already been presented in a prior application and rejected, which means it must be dismissed under § 2244(b)(1). As the Supreme Court explained in Calderon, "[o]therwise, petitioners could evade the bar against relitigation of claims presented in a prior application." Calderon, 523 U.S. at 553, 118 S. Ct. at 1500. An error of law, even one demonstrated by an intervening decision, does not fit either of the extra-statutory exceptions to the rule we have borrowed from Calderon and announced today. If it were otherwise, a habeas petitioner could use Rule 60(b)(6) to re-open a judgment denying habeas relief based upon a new decision implicating the correctness of the denial of relief in his case, even if that decision came ten,

64

twenty, or thirty years after the judgment had been rendered, and even if it had not been made retroactively applicable to his case.[13] There would be no finality. Because in Gonzalez's case there is no clerical error and there is no allegation of fraud affecting the prior habeas proceeding, the district court properly denied his Rule 60(b) motion.

## B.

Mobley contends that the fraud exception applies to permit his Rule 60(b) motion to be decided under that rule without being subject to the § 2244(b) bar on

---

[13] The only circumstance in which Congress permitted a final habeas judgment to be reopened because of a new decision is where the petitioner asserts for the first time a claim that "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2244(b)(2)(A). Gonzalez's claim fails to meet the requirements of that exception to the bar against second or successive claims.

This case sharply illustrates the difference between how our approach treats the restrictions contained in § 2244(b)(2) and how the dissent would treat them. Under our approach § 2244(b)(2)(A) still serves an important function. It serves to limit the circumstances in which a judgment denying habeas relief can be re-opened based upon a new decision. If the stringent requirements of that carefully drafted statutory provision are met, a new decision can be used to re-open the judgment, but not otherwise.

By contrast, under the dissent's position, § 2244 (b)(2)(A) would serve no purpose whatsoever. Why would a prisoner seeking to benefit from a new decision ever seek to obtain permission to file a second or successive petition by meeting the stringent requirements of that statutory provision when he would have a much easier time of it filing a Rule 60(b)(6) motion? Under the dissent's position, relief is available under that rule even if the new decision (as in this case) is not one of constitutional law, and even if the Supreme Court has not made that decision retroactively applicable to cases on collateral review. The dissent says that "Rule 60(b) is the perfect vehicle for invoking the intervening-change-in-the-law exception." Dissenting Op. at 129. It is, only if one thinks that a statutory provision specially targeting and narrowing the circumstances in which that exception should be invoked should be rendered perfectly meaningless.

65

second and successive petitions. However, his effort to establish that the claim contained in his motion fits within the fraud exception falls short. The claim is that Andrew Fuller, who testified at the sentence stage as the former prosecutor in the case, gave false testimony about the position of the victim's family regarding the sentence Mobley should receive for the murder. We begin by putting that testimony in context.

At the sentence stage of the trial (actually the retrial), Mobley put in evidence through the testimony of one of his attorneys that Mobley had offered to plead guilty to any crime with any sentence, so long as the sentence was not death. How that evidence is mitigating is not clear, but the theory may have been that the offer reflected well on Mobley because it demonstrated a willingness to accept some punishment for the cold-blooded murder he had committed.[14] If that was the theory it is a stretch, because Mobley's plea efforts simply show a desire to save his own skin, a willingness to deal in order to avoid the full penalty for his crime.

To Mobley's evidence that he had offered to plead guilty, the State responded with the testimony of former prosecutor Fuller, who explained to the jury why he had rejected Mobley's plea offer. The Georgia Supreme Court had indicated earlier

_____

[14] The defense's mitigation theory was not that Mobley's offer to plead showed any kind of remorse. We know that, because the defense was adamant throughout the sentence hearing that Mobley was a sociopath who could not feel remorse, and for that reason he should not be faulted for acting in a remorseless way during and after the murder.

66

in the interlocutory appeal in the case that if Mobley's plea offer came into evidence, the reasons that Fuller rejected the offer could come in as well. See Mobley v. State, 262 Ga. at 810-11, 426 S.E.2d at 152-53. Fuller's testimony was not for the purpose of establishing an aggravating circumstance, but instead was for the purpose of weakening whatever small mitigating effect otherwise might arise from evidence of Mobley's attempt to escape a death sentence by plea bargaining. The factual issue being explored was not whether the family of the victim, John Collins, supported a death sentence for his murder, but why the district attorney at that time had decided to seek one.

The transcript of the sentence stage shows Fuller did not testify that the victim's family was firm in wanting a death sentence, and he never told the jury that the family's feelings were a material consideration in his decision to seek death. Instead, he testified that "without question" the decision about the punishment to seek in a capital case "falls on the shoulders of the district attorney," and while district attorney he had made that decision. Although Fuller generally listened to the victim's family's views about the penalty, their views were, in his words, only "a small percentage factor on the scale of things." He explained that: "I want them to appreciate the fact that I make the decision. And families generally – and this family did not want to make the decision, they don't want to come to a meeting

67

after what they've been through . . . they don't want to make the decision, and it's not their decision to make, anyway." He added: "But, yeah, I listened to them and I want to give every opportunity to everybody to have their input in a case because it is – it's a big decision."

When asked point blank how big a factor the family's position was in his decision to seek a death sentence, Fuller answered that: "90, 95 percent of the decision" was "based on the evidence I see that describes and defines the defendant for me." He testified he had concluded that the facts called for a sentence of death in the case, and although the family supported his decision to seek it they had never pressured him, and they had actually told him, "[i]t is your decision, we put our trust in you." During cross-examination, Mobley's counsel asked: "The Collins family, you alluded to this, they have never pushed you one way or the other in this case, is that correct?" Fuller answered: "That is correct." He was asked: "They have always deferred to your judgment at the time as to what should be done, correct?," to which he answered: "Yes."

In his testimony at the sentence stage, Fuller did not simply deny that the views of the family were a significant factor in his decision to seek a death sentence, he elaborated on the more important factors that had led him to his decision. The case against Mobley for the robbery and murder of John Collins was

68

a strong one.  The evidence included a confession and the recovery of the pistol used in the killing, which Mobley had thrown out after the crime.  The murder was a merciless, cold-blooded, execution-style killing stemming from a well-planned robbery of a Domino's Pizza franchise.  Mobley marched Collins to the back where he forced him to get down on his knees, and while Collins was begging for his life Mobley shot him in the back of the head at close range.  From those facts alone, in Fuller's words, "it became glaringly apparent that this was a capital case and I would proceed [with it] as a capital case."  But there was more, a lot more, that cemented Fuller's decision to insist on a death sentence.

Before the trial Fuller learned that Mobley had spoken to another inmate in a disparaging way about how Collins, while kneeling, had begged for his life.  Then Fuller learned Mobley had said that he wanted to get out of jail, because "he knew where he could get a job real quick, when he got out of jail, at Domino's Pizza because he knew there was a vacancy."  As if that were not enough, Fuller found out that Mobley had gotten himself a jailhouse tattoo of the Domino's Pizza symbol.  Fuller's reaction:  "I mean, I could not believe it, I could not believe it."

Still, there was more.  Mobley got into a confrontation with a deputy about aspirin or some similar medication, and as Fuller related it to the jury:  "Mr. Mobley told the deputy that he was looking more and more like a Domino's Pizza delivery

boy." Fuller's reaction: "Again, I would have to say I couldn't believe it, you know." Finally, Fuller learned that Mobley, while he was awaiting trial, had participated in the rape of another inmate.

In all of those statements and actions of Mobley, Fuller saw: "[P]ure unadulterated meanness. It was nothing but pure unadulterated meanness in my viewpoint." Fuller was determined to seek the death penalty "for the protection of the people of the State of Georgia." When asked whether there was ever a point from the beginning of the case throughout the prosecution when he ever gave serious consideration or came close to not seeking the death penalty and to accepting the plea offer, Fuller answered: "Never." When asked if he had ever questioned the decision he had made to seek the death penalty, Fuller answered: "Never."

The closing arguments at the sentence stage of Mobley's trial show that no one interpreted Fuller's testimony to mean that the victim's family had been strong for a death sentence or that their feelings had affected Fuller's decision to seek one. The position of the victim's family about the proper penalty in the case was never even alluded to by the prosecution during its lengthy closing argument. It was, however, brought up by the defense. During his closing argument defense counsel reminded the jury that Fuller had testified that the family had not demanded the

70

death penalty but instead had left up to Fuller the decision about the penalty to seek. Defense counsel argued that was a reason the jury should not impose a death sentence.

Those are the facts. Here are Mobley's allegations – and we stress that so far they are only allegations, not supported by so much as a proffered affidavit. In his Rule 60(b) motion, Mobley alleges that Fuller had told the victim's family that life without parole was not a sentencing option, and after using that misrepresentation to secure their support for a death sentence Fuller testified before the sentencing jury that the family did support his decision to seek death, knowing all along that the family would not have supported it if they had known life without parole was an option.

To the extent Mobley's claim is that Fuller violated his constitutional rights by defrauding the family into giving him its support for a death sentence, the claim is without any legal basis. A defendant has no constitutional right to have the prosecutor explain the law accurately to the victim's family, and even if such a far-fetched constitutional right were created it would not be available to a petitioner for whom there is already a final judgment denying federal habeas relief.

To the extent Mobley's claim is that Fuller's testimony at the sentencing stage about the family's support defrauded the jury into returning a death sentence,

71

the claim is not about fraud on the federal courts. As Judge Tjoflat explained when the case was before the panel, the fraud Mobley alleges was not committed when the case was before the federal habeas court but earlier when it was before the state courts. Mobley, 306 F.3d at 1106 (Tjoflat, J., dissenting) ("Read in the best possible light, Mobley's allegations imply that the State may have committed a fraud upon the Georgia superior court by proffering Fuller's allegedly false testimony during Mobley's sentencing.").[15] Fuller did not testify in the federal habeas proceeding, and the claim Mobley wants to present at this late date was not presented during that proceeding.[16] The fraud exception to our rule that 60(b) relief will not be granted to reopen final judgments denying federal habeas relief applies where the fraud was perpetrated on the federal court and resulted in the denial of federal habeas relief, not where the fraud was perpetrated on a state court. To the extent Mobley is asserting that the alleged fraud on the state court violated some federal constitutional right of his, he is simply putting forward a new federal constitutional claim that was not presented in his earlier habeas petition. It is a

---

[15] We agree with those statements from Judge Tjoflat's dissenting opinion in Mobley that we quote in this opinion, but beyond that we do not adopt his opinion in that case or its approach.

[16] Mobley did raise in his federal habeas petition a claim that Fuller had lied during his state trial testimony but that was a different claim about a different part of Fuller's testimony, and that claim was held to be procedurally barred anyway, without any decision about its merits. Mobley v. Head, 306 F.3d at 1106 n.10 (Tjoflat, J., dissenting).

classic successive petition claim subject to the § 2244(b)(2) restrictions, which this claim does not meet. It is not a claim based upon a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, § 2244(b)(2)(A). Nor is it a claim based upon newly discovered evidence which, when the evidence is considered as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense, § 2244(b)(2)(B).

We do not mean to imply that the only defect in Mobley's fraud theory involves the court on which the alleged fraud was perpetrated. There can be no fraud unless the falsehood is material, and here the alleged falsehood is immaterial. After all, we are talking about one minor aspect of a former prosecutor's explanation about why he had rejected a conditional guilty plea offer of the defendant. And the support of the victim's family for a death sentence, even if it was obtained by the prosecutor's misrepresentation, counted for little in the prosecutor's decision making process, a process that he explained in great detail to the jury.

The mitigating weight of a defendant's attempt to avoid a death sentence by offering to plead guilty is so slight, if it exists at all, that even undiminished the

73

effect would hardly register. And the only mention during closing arguments of the allegedly false part of the former prosecutor's testimony was by defense counsel who cited that testimony as a reason for the jury not to impose a death sentence. It is no wonder that the state trial court, when considering this fraud claim, concluded that any misrepresentations or false testimony by Fuller along these lines was immaterial to the death sentence the jury returned in this case. See Mobley, 306 F.3d at 1099.[17]

For all of these reasons, Mobley's case does not come within shouting distance of the fraud exception outlined in the Hazel-Atlas decision, where there was "a deliberately planned and carefully executed scheme" participated in by attorneys in a federal proceeding to defraud a federal court, 322 U.S. at 245-46, 64 S. Ct. at 1001, with carefully constructed bogus evidence which not only was presented to that federal court but which also affected the federal court's decision. Id. at 241, 244-47, 64 S. Ct at 997, 1000-02. Mobley is not entitled to have the

---

[17] We probably should add that the jury was presented with evidence that Mobley had committed six other robberies in the three weeks between his murder of Collins and his arrest for it.

judgment denying him federal habeas relief reopened on this or any other basis.[18]

The district court did not abuse its discretion in denying his Rule 60(b) motion.

VI.

In conclusion, a Rule 60(b) motion seeking to reopen the judgment in a §

2254 or § 2255 case should be denied by the district court, unless it is filed to

correct a clerical mistake (meaning it is really a Rule 60(a) motion) or is filed

pursuant to Rule 60(b)(3) to remedy a fraud agents of the government perpetrated

on the federal court. No appeal from the denial of a Rule 60(b) motion seeking to

reopen a judgment denying § 2254 or § 2255 relief may proceed unless a § 2253

certificate of appealability is issued.

Mobley's application for a certificate of appealability is GRANTED, but the

district court's denial of his Rule 60(b) motion is AFFIRMED. His motion to recall

the mandate is DENIED, and the stay of execution entered on his behalf by the

panel is VACATED. Any other applications or motions Mobley has filed are

DENIED.[19]

---

[18] The State of Georgia contends that even if there had been fraud it is not responsible because Fuller was no longer a prosecutor at the time he testified; he was then a state court judge. We need not decide how the fact that Fuller was not an attorney for the state in the proceeding impacts the analysis, because it does not matter. Even if he had been the district attorney at the time of his testimony in the sentence proceeding, that would not change our conclusion.

[19] There is some confusion about whether Mobley filed, or merely lodged with this Court without subsequently filing, an application for a certificate to permit him to file a successive

Lazo's application for a certificate of appealability is DENIED.

Gonzalez's application for a certificate of appealability is GRANTED, but the district court's denial of his Rule 60(b) motion is AFFIRMED.

---

habeas petition. If he did file that application, it is denied, because it fails to fit within the requirements of § 2244(b).

EDMONDSON, Chief Judge, specially concurring in part and dissenting in part:

In these appeals, we are called upon to clarify the interaction of two laws which Congress has approved: Fed. R. Civ. P. 60 and AEDPA. As I understand our duty in such instances, we must give each all the force that we can. See, e.g., Reg'l Rail Reorganization Act Cases, 95 S.Ct. 335, 354 (1974) ("A new statute will not be read as wholly or *even partially amending* a prior one unless there exists a positive repugnancy between the provisions of the new and those of the old that cannot be reconciled.") (emphasis added). I agree, however, that AEDPA would trump Rule 60 when, and to the degree, an irreconcilable conflict arises. I believe that Judge Tjoflat has the better understanding of how these laws interact: his view seems more correct to me because it leaves Rule 60 more intact as well as crediting AEDPA.

The Supreme Court's decision in Calderon, I think, does not control the present cases. In Calderon, the Court did not deal with Rule 60 and was not governed by AEDPA; so, the Supreme Court did not grapple (as we do now) with the duty to give the fullest possible credit to two different laws, each of which Congress had approved. I cannot agree that extending Calderon -- an inherent-judicial-powers case in which the Supreme Court acted not only as interpreter of

77

laws, but also as supervisor of lower courts -- is either necessary or proper for the present appeals.

I suppose that the sharp-edged formulation today's Court makes of Rule 60 will be easier for courts to apply. It might be easier because this approach seems to require less deliberate study of the pertinent motion -- study to determine accurately not just the name of the pertinent motion, but the function of the motion (is it in reality a claim of illegal detention: a habeas petition?) -- than would be required by the law as Judge Tjoflat understands it. For this reason and others, I personally like the ingenious formulation today's Court makes of Rule 60 in habeas cases.

If I were the policy-maker for the nation, I might embrace today's Court's formulation. (Perhaps Congress will too.) But, of course, federal judges are not the rightful makers of policy in this sphere. And we cannot properly favor what is convenient over what is true. And what, to me, is truly required jurisprudentially in a case like this one is the approach that gives both of the laws Congress has approved their fullest possible force. Moreover, I am confident that judges have the ability to apply the law as Judge Tjoflat has found it: it is hornbook law that courts are to determine the legal effect of motions by the motions' substance rather than by their titles.

I know of the frustrations caused by the lack of finality in litigation. I personally am keen for more finality in the criminal justice process. But today, the finality that we as judges can rightly impose on the criminal process is no more finality than Rule 60 and AEDPA will allow when these laws are each faithfully given the fullest possible force. In the light of this principle, I join in the results Judge Tjoflat would reach in these appeals.

TJOFLAT, Circuit Judge, specially concurring in part and dissenting in part.[1]

## I.

Federal Rule of Civil Procedure 60(b) authorizes the district courts to relieve a party to a civil action from the force of a final judgment on the following grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence [the party] could not have . . . discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Additionally, under what has been labeled Rule 60(b)'s "savings clause,"[2] the district courts retain the power "to entertain an independent action to relieve a party

---

[1] I join the majority in affirming the district court's judgment in <u>Mobley</u>. I specially concur in the majority's judgment in <u>Lazo</u>. The majority refuses to grant Lazo a certificate of appealability and therefore effectively affirms the district court's judgment denying his Rule 60(b) motion. Because the district court lacked subject matter jurisdiction to entertain the motion—which was a second or successive motion under 28 U.S.C. § 2255 disguised as a motion under Rule 60(b)—I would affirm its judgment. I dissent, however, from the majority's decision to affirm in <u>Gonzalez</u>. In that case, the district court held that it lacked jurisdiction to consider the petitioner's Rule 60(b) motion, and the majority affirms. I believe the district court had jurisdiction. Therefore, I would vacate the district court's ruling and remand the case with the instruction that the district court consider the motion on its merits.

[2] <u>Travelers Indem. Co. v. Gore</u>, 761 F.2d 1549, 1551 (11th Cir. 1985); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2868, at 396 (1995).

from a judgment, order, or proceeding . . . or to set aside a judgment for fraud upon the court."

Today, the majority today holds that, with the exception of the ground provided by Rule 60(b)(3),[3] the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, precludes the district courts of the Eleventh Circuit from entertaining Rule 60(b) motions filed by prisoners who seek the vacation of the district court's judgment denying them habeas corpus relief.[4] To obtain relief on any of the remaining grounds provided by the Rule (i.e., Rule 60(b)(1), (2), and (4)–(6)), the petitioner must apply to this court pursuant to 28 U.S.C. § 2244(b)(3) for leave to file his Rule 60(b) motion.[5] The majority treats

[3] The majority also recognizes a second exception. The district courts retain the authority under Fed. R. Civ. P. 60(a) to correct "a mere clerical mistake" in a final judgment. Maj. op. at 56. None of the three appeals before us implicates this rule; hence, I make no further mention of it.

[4] The majority's decision restricts the ability of prisoners to file Rule 60(b) motions and independent actions preserved by the Rule's savings clause. Maj. op. at 55 n.11. Before today, such actions were available to habeas petitioners. See, e.g., Buell v. Anderson, 48 Fed. Appx. 491, 498 (6th Cir. 2002) ("An independent action for relief is an equitable remedy available in civil trials, including habeas proceedings which are conducted under civil rules of procedure."); Hess v. Cockrell, 281 F.3d 212, 217 (5th Cir. 2000) (denying the habeas petitioner's independent action for relief from adverse judgment because the petitioner failed to establish "[t]he elements of an independent action" as prescribed in Bankers Mortgage Co. v. United States, 423 F.2d 73, 79 (5th Cir. 1970)). Unless I note otherwise, this opinion applies equally to both Rule 60(b) motions and independent actions preserved by the Rule.

[5] Both state and federal prisoners must obtain leave of the appropriate court of appeals before filing second or successive collateral attacks upon their convictions or sentences. A court of appeals may only grant such leave to state prisoners who satisfy the criteria of 28 U.S.C. § 2244(b) or federal prisoners who satisfy the criteria of § 2255. Section 2244(b) provides:

81

any motion based on one or more of those grounds as a second or successive habeas

petition ("SSHP")[6] even if the motion contains no constitutional claim at all. The

majority also holds that before the petitioner can appeal the denial of a Rule

---

(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(b)(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
(A) the applicant shows that that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Section 2255 provides:

A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Throughout this opinion, I analyze the effects of the majority's holdings on litigation involving Rule 60(b). Although I often write in terms of how § 2244's restrictions on successive petitions (filed by state prisoners under § 2254) will impact such litigation, this discussion generally extends equally to § 2255's comparable restrictions on successive motions (filed by federal prisoners under that section). While §§ 2244 and 2255 are not textually identical, their differences are of no consequence in my analysis unless I note otherwise.

[6] Here and throughout this opinion, the phrase "second or successive habeas petitions" and the abbreviation "SSHP" refer also to second or successive motions under § 2255.

60(b)(3) motion, either the district court or this court must issue a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253.

I respectfully dissent from these two holdings because the rationale supporting them is fundamentally flawed. Aside from this, I am convinced that the implementation of the majority's holdings will unnecessarily add to the workload of this court.

This opinion is organized as follows. Part II addresses the majority's first holding, which treats all Rule 60(b) motions—with the exception of those filed under Rule 60(b)(3)—as SSHPs. Part III addresses the majority's second holding, which requires the issuance of a COA before a petitioner can appeal the district court's denial of a Rule 60(b)(3) motion. Part IV describes the practical implications of the majority's holdings. Part V suggests the dispositions we should make in the three consolidated appeals before us.

## II.

By treating all Rule 60(b) motions—except those filed under Rule 60(b)(3)—as SSHPs, the majority misunderstands the history and purpose of Rule 60(b), fails to appreciate the functional difference between an SSHP and a Rule 60(b) motion, and misapplies the Supreme Court's decision in Calderon v.

83

Thompson, 523 U.S. 538, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998).  I address these points in turn and then suggest the course we should follow.

A.

At common law, "the term of court was decisive in determining whether or not the district court had power over its final judgments and decrees."  Note, History and Interpretation of Federal Rule 60(b) of the Federal Rules of Civil Procedure, 25 Temple L.Q. 77, 78 (1951) [hereinafter "Note, History."].  During the term, a court "had full power to vacate or revise [its] judgments."  Commentary, Effect of Rule 60b on Other Methods of Relief from Judgment, 4 Fed. Rules Serv. 942, 942 (1941).  After the term, a party could obtain relief from a judgment only through four types of "remedial devices": (1) one of the ancient writs, i.e., "audita querela, coram nobis, coram vobis, bill[s] of review, and bill[s] in the nature of bills of review"; (2) an "[i]ndependent action[] for relief, based on extrinsic fraud, mistake, and accident"; (3) the "[i]nherent power of the court to modify judgments"; and (4) the "[p]ower [of the court] to disregard void judgments."  Note, Federal Rule 60(b): Relief from Civil Judgments, 61 Yale L.J. 76, 76 n.3 (1952).

Each of the ancient writs permitted relief in different scenarios.  Audita querela, a common law writ, typically "afford[ed] relief to a judgment debtor against a judgment or execution because of some defense or discharge arising

84

subsequent to the rendition of the judgment or the issue of the execution." 11

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

Procedure § 2867, at 394 (Civil 2d ed. 1995). Coram nobis and coram vobis, both

equitable in nature, sought to remedy "mistakes of fact, not appearing on the face of

the record, and but for which the judgment would not have been entered."

Commentary, supra, at 942-43. If the judgment under attack issued from the King's

Bench, the former writ was appropriate; if it issued from any other court, the latter

was used. Black's Law Dictionary 338 (7th ed. 1999). A bill of review in equity

would lie upon any of four grounds: (1) "error of law apparent upon the record," (2)

"newly discovered evidence," (3) "the occurrence of new matter or new facts after

the entry of the decree which make its enforcement inequitable," or (4) "fraud in

procuring the decree." James Wm. Moore & Elizabeth B. A. Rogers, Federal Relief

from Civil Judgments, 55 Yale L.J. 623, 677-79 (1946).

Despite their formal distinctions, however, the ancient writs as a practical

matter had confusing and "uncertain boundaries." Klapprott v. United States, 335

U.S. 601, 614, 69 S. Ct. 384, 390, 93 L. Ed. 266 (1949). For example, while the

usual rule was that audita querela lay only for matters arising subsequent to

judgment, many courts granted relief under this writ for matters arising before

judgment, thereby blurring the distinction between audita querela and coram nobis

85

(or vobis). 12 James Wm. Moore et al., Moore's Federal Practice § 60 App. 105, at 60 App.-29 (3d ed. 2003). The Supreme Court in Klapprott recognized that "few courts ever . . . agreed as to what circumstances would justify relief under these old remedies." 335 U.S. at 614, 69 S. Ct. at 390.

The enactment of the Federal Rules of Civil Procedure in 1938 was, in part, an attempt to eliminate the confusion caused by the inconsistent application of these ancient writs. In its original form, Rule 60(b) stated:

> On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court (1) to entertain an action to relieve a party from a judgment, order, or proceeding, or (2) to set aside within one year, as provided in Section 57 or the Judicial Code, U.S.C., Title 28, § 118, a judgment obtained against a defendant not actually personally notified.

Moore, supra, § 60 App. 10[1], at 60 App.-2. On its face, Rule 60(b) seemed progressive; parties could seek relief from judgments without resort to the ancient writs and without regard to the term of court, subject to the six-month limitations period. But many courts stripped the Rule of its progressivity through traditional common law devices. Some courts, for example, granted motions for relief filed more than six months after final judgment, often based upon their "'inherent power'

86

to control judgments where the 'term' had not expired."  Note, <u>History</u>, <u>supra</u>, at 78.

Other courts "read into [Rule 60(b)] the nebulous writs that had traditionally

provided post-term relief."  <u>Id.</u>

This problem did not go unnoticed.  In 1946, Rule 60(b) was substantially

amended to read as it does today.[7]  In addition to providing six grounds for relief,

<u>see</u> <u>supra</u> Part I,

> th[e] rule does not limit the power of a court to entertain an
> independent action to relieve a party from a judgment, order, or
> proceeding, or to grant relief to a defendant not actually personally
> notified as provided in Title 28, U.S.C., § 1655, or to set aside a
> judgment for fraud upon the court.  Writs of coram nobis, coram vobis,
> audita querela, and bills of review and bills in the nature of a bill of
> review, are abolished, and the procedure for obtaining any relief from a
> judgment shall be by motion as prescribed in these rules or by an
> independent action.

Fed. R. Civ. P. 60(b).

The drafters of modern Rule 60(b) were unconcerned with "the substantive

law as to the grounds for vacating judgments."  Fed. R. Civ. P. 60 advisory

committee's note (1946).  Rather, they sought to create a comprehensive procedural

scheme, one that would "remove the uncertainties and historical limitations of

ancient remedies while preserving all of the various kinds of relief that they

afforded."  11 Wright, Miller & Kane, <u>supra</u>, § 2851, at 227.  The Rule

---

[7] The minor amendments made since 1946 are of no concern to us here.

accomplished three tasks. First, it set different time limits for articulating different grounds of relief. Second, the Rule abolished the ancient writs, "shrouded [as they were] in ancient lore and mystery." Advisory committee's note, supra. Third, Rule 60(b) established four devices for parties to seek relief from civil judgments:

1. Rule 60(b) motions. A party may seek relief from a judgment upon any ground enumerated in the Rule.

2. Independent Actions. A party may initiate a new action to seek relief from a judgment. It may bring this action in any district court, not just the one that rendered the judgment from which relief is sought. 11 Wright, Miller & Kane, supra, § 2851, at 229.

3. Statutory procedures. A court may grant relief from a judgment without resort to Rule 60(b) as authorized by statute.[8]

4. Inherent powers. Rule 60(b) expressly permits a district court "to set aside a judgment for fraud upon the court."

---

[8] There are at least three examples in this category. First, Rule 60(b) states that it does not "limit the power of a court to . . . grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. § 1655," which prescribes how courts should deal with absent defendants in lien enforcement proceedings. Second, the 1946 advisory committee's note recognizes that "under . . . the Soldiers' and Sailors' Civil Relief Act of 1940 . . . a judgment rendered in any action or proceeding governed by the [Act] may be vacated under certain specified circumstances upon proper application to the court." Third, "the declaratory-judgment statute [28 U.S.C. § 2202] authorizes the court to grant additional 'necessary or proper relief' based on any judgment entered under it, and a party can seek [such relief] without satisfying the requirements of Rule 60(b)." 11 Wright, Miller & Kane, supra, § 2869, at 408.

88

The best explanation of the interrelationship of Rule 60(b) and the independent actions preserved by the Rule's savings clause is contained in the Fifth Circuit's opinion in <u>Bankers Mortgage Co. v. United States</u>, 423 F.2d 73, 78-79 (5th Cir. 1970):[9]

> The second procedure contemplated by Rule 60(b) is an independent action to obtain relief from a judgment, order, or proceeding. The . . . saving clause specifically provides that 60(b) does not limit the power of the court to entertain such an action. It is important to emphasize 'independent action,' as used in this clause, was meant to refer to a procedure which has been historically know simply as an independent action in equity to obtain relief from a judgment. This action should under no circumstances be confused with ancillary common law and equitable remedies or their modern substitute, the 60(b) motion.
>
> When a court grants relief from a judgment or decree by a new trial or rehearing, or by one of the ancillary common law or equitable remedies or their modern substitute, a motion, it is exercising a supervisory power of that court over its judgment; but the original bill, or independent action, to impeach for fraud, accident, mistake or other equitable ground is founded upon an independent and substantive equitable jurisdiction.

If the litigant's "right to make a [Rule 60(b)] motion is lost by the expiration of the time limits fixed in these rules, the only procedural remedy is by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action." <u>Id.</u> at 81 n.13.

---

[9] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

B.

In part because it failed to appreciate this history, the majority overlooks the important distinctions between the motions and independent actions Rule 60(b) authorizes and SSHPs. Like the ancient procedures it replaced, Rule 60(b) was never intended to permit parties to relitigate the merits of claims or defenses, or to raise new claims or defenses that could have been asserted during the litigation of the case. Rather, the aim of Rule 60(b) was to allow a district court to grant relief when its judgment rests upon a defective foundation.

As applied in the habeas context, the "factual predicate [of a Rule 60(b) motion] deals primarily with some irregularity or procedural defect in the procurement of the judgment denying habeas relief." Rodwell v. Pepe, 324 F.3d 66, 70 (1st Cir. 2003). The same is true with respect to an independent action brought under the Rule's savings clause. See Buell v. Anderson, 48 Fed. Appx. 491, 498 (6th Cir. 2002) (explaining the elements of an independent action, all of which concern the integrity of the habeas judgment); Hess v. Cockrell, 281 F.3d 212, 217 (5th Cir. 2002) (same). A true Rule 60(b) motion "seek[s] relief from a federal court's final order entered in a habeas proceeding on one or more of the grounds set forth in" the Rule. Abdur'rahman v. Bell, 537 U.S. 88, 94, 123 S. Ct.

90

594, 597, 154 L. Ed. 2d 501 (2003) (Stevens, J., dissenting). Neither proceeding constitutes a collateral attack on the underlying conviction or sentence.

An SSHP is a different species. Like a first petition for a writ of habeas corpus, an SSHP is a collateral attack upon the applicant's conviction or sentence. After AEDPA, an applicant may seek SSHP relief by asserting "(1) claims that 'rel[y] on a new rule of constitutional law,' and (2) claims that rely on a rule of constitutional law and are based on evidence that 'could not have been discovered previously through the exercise of due diligence' and would establish the petitioner's factual innocence." Mobley v. Head, 306 F.3d 1096, 1100-01 (11th Cir. 2002) (vacated panel opinion) (Tjoflat, J., dissenting) (quoting 28 U.S.C. § 2244(b)(2)). Thus, SSHPs are concerned entirely with "alleged violations of federal rights" that occurred during the proceedings resulting in the petitioner's conviction or sentence. Rodriguez v. Mitchell, 252 F.3d 191, 199 (2d Cir. 2001). As I noted in my dissent from the panel opinion in Mobley,

> [n]either of [the] types of claims [cognizable under section 2244(b)(2)] challenges the district court's previous denial of relief under 28 U.S.C. § 2254. Instead, each alleges that the contextual circumstances of the proceeding have changed so much that the petitioner's conviction or sentence now runs afoul of the Constitution.

Mobley, 306 F.3d at 1101 (Tjoflat, J., dissenting).

Thus, "the difference [between an SSHP and a Rule 60(b) motion] is defined by the relief that the applicant seeks." Abdur'rahman, 537 U.S. at 94, 123 S. Ct. at 597 (Stevens, J., dissenting). An SSHP,

> like all habeas corpus petitions, is meant to remedy constitutional violations (albeit ones which arise out of facts discovered or laws evolved after an initial habeas corpus proceeding), while a Rule 60(b) motion is designed to cure procedural violations in an earlier proceeding—here, a habeas corpus proceeding—that raise questions about that proceeding's integrity.

Mobley, 306 F.3d at 1101 (Tjoflat, J., dissenting). By granting an SSHP, the district court "invalidat[es]" the conviction or sentence. Rodriguez, 252 F.3d at 198. By granting a Rule 60(b) motion, the court "merely reinstate[s] the previously dismissed petition for habeas, opening the way for further proceedings seeking ultimately to vacate the conviction." Id.

C.

In defense of its holding that all Rule 60(b) motions—except motions seeking Rule 60(b)(3) relief—are SSHPs that cannot be filed in the district court without leave of this court obtained pursuant to § 2244(b)(3)(A), the majority relies upon the Supreme Court's decision in Calderon.

92

In that case, the petitioner moved the court of appeals to recall its mandate denying habeas relief. Calderon, 523 U.S. at 545-46, 118 S. Ct. at 1496.[10] The panel of the court that decided the petitioner's appeal denied his motion. The court thereafter convened en banc to hear oral argument on the question of "whether the panel decision . . . would result in a fundamental miscarriage of justice." Id. at 547, 118 S. Ct. at 1497. After hearing argument, the en banc court, acting sua sponte, recalled the court's mandate and affirmed the district court's decision. Id. at 548-49, 118 S. Ct. at 1497.

The Supreme Court reversed. Acknowledging that in some circumstances a court of appeals has "inherent power to recall [its] mandate[]," id. at 549, 118 S. Ct. at 1498, the Court concluded that the en banc court's exercise of such power in this case constituted an abuse of discretion, id. at 566, 118 S. Ct. 1506. As for the State's argument that AEDPA barred the court from recalling the mandate, the Court held that AEDPA had no application because the court recalled the mandate on its own initiative, not on the petitioner's motion. Id. at 554, 118 S. Ct. 1500. Nonetheless, the Court had this to say about AEDPA's application when a court of

_____

[10] The next day, he moved the district court pursuant to Rule 60(b) to vacate its decision which granted in part and denied in part his application for a writ of habeas corpus. The filing of the Rule 60(b) motion had no bearing on the Supreme Court's eventual decision in Calderon, and it has no bearing on our decisions today.

93

appeals is considering whether to grant a habeas petitioner's motion to recall its

mandate:

> In a § 2254 case, a prisoner's motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b).  Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application, § 2244(b)(1), or the bar against litigation of claims not presented in a prior application, § 2244(b)(2).  If the court grants such a motion, its action is subject to AEDPA irrespective of whether the motion is based on old claims (in which case § 2244(b)(1) would apply) or new ones (in which case § 2244(b)(2) would apply).

Id. at 553, 118 S. Ct. at 1500.

I concur in the majority's view that once a court of appeals issues its mandate

in a habeas case, a petitioner's Calderon-type motion to recall the mandate, which

asks the court of appeals to entertain a new claim or revisit an old claim, constitutes

an SSHP as defined by AEDPA.[11]  I further observe that Calderon, in application,

yields this result: the petitioner's motion to recall the mandate must be denied.  If

---

[11]  I assume here that the majority is only concerned with motions to reconsider an appellate decision after the mandate issues.  Despite its treatment of motions to recall the mandate, the majority opinion does not explicitly interpret Calderon to treat timely petitions for rehearing as SSHPs.  I believe this discrepancy might be explained by the fact that a habeas petitioner's petition for rehearing must be filed prior to the court's issuance of its mandate, while the court can still revisit its decision.  See Fed. R. App. P. 41.

Furthermore, I read Calderon to apply only to motions to recall the mandate that ask the court of appeals to entertain new constitutional challenges to a petitioner's conviction or sentence or revisit old ones.  I disagree with the majority insofar as it reads Calderon more broadly.  If the motion to recall the mandate challenged the integrity, rather than correctness, of the appellate decision, that motion would, in my view, fall beyond Calderon's scope.  I must confess, however, that such a motion is difficult to imagine.

the motion merely asks the court to revisit its disposition of the claims the petitioner had (unsuccessfully) litigated, § 2244(b)(1) requires that the court deny the motion.[12] If the motion raises new claims, the court will deny it under the time-honored rule that a court of appeals will not consider claims not seasonably presented to the district court in the first instance.[13]

Calderon does not speak to the authority of the district court to grant a habeas petitioner relief under Rule 60(b). The majority believes that it does by analogy.[14] An analogy may appear at first blush, but, to me at least, it disappears when one

_____

[12] In a case in which, after the court of appeals mandate issued, the Supreme Court handed down a new rule of constitutional law made retroactive to cases on collateral review that would have required the court of appeals to decide a claim in favor of, rather than against, the petitioner, query whether AEDPA, as interpreted in Calderon, would permit the court to grant the petitioner's motion to recall the mandate (on the basis of the new rule) or require the court to deny the motion under § 2244(b)(1). If AEDPA would bar the court from granting the petitioner's motion, the petitioner's avenues of relief would be to (1) move the district court pursuant to Rule 60(b)(6) to vacate its decision rejecting the claim, or (2) bring an independent action, as permitted by Rule 60(b)'s savings clause.

[13] In denying the motion, although the law would not require it to do so, the court could call the petitioner's attention to § 2244(b)(3)(A) and inform the petitioner that if he wishes to pursue his new claims, he must apply to this court for leave to file the claims in the district court.

[14] According to the majority,

Calderon's lessons about whether and when an appellate court's power to recall a mandate may be used in habeas cases apply with as much force to the question of whether and when a trial court's Rule 60(b) authority to reopen a final judgment may be used in a habeas case. Recalling the mandate to reopen and alter the final judgment in a habeas case is the closest thing on the appellate level to the use of Rule 60(b) to reopen and change a final judgment at the trial level.

Maj. op. at 49-50.

95

compares recalling an appellate mandate with the collateral attacks provided by Rule 60(b) and the independent actions the Rule preserves under its savings clause.

By recalling its mandate, the court of appeals may reexamine its decision. Calderon permits the court to recall its mandate for such purpose if it does so on its own initiative. The fact that Calderon bars the court from recalling its mandate (in a habeas case) on the petitioner's motion does not alter the fact that, once the mandate is recalled, the court is in the same position it occupied before the mandate issued. When considering a motion to recall the mandate similar to that addressed in Calderon, the court of appeals is not entertaining a collateral attack that questions the integrity or legitimacy of its judgment. See supra note 11. Instead, drawing on the same record it had before it when it rendered its decision, the court is simply reconsidering whether to adhere to its decision or come down another way.

The district courts lack the broad power the courts of appeals possess to recall their judgments. If it does not receive a motion filed pursuant to Rules 50(b), 52(b), 59 (a) or (e), or act sua sponte under Rule 59(d) of the Federal Rules of Civil Procedure no later than "10 days after the entry of judgment," a district court loses jurisdiction to revisit the claims and defenses the judgment resolved.[15] As

_____

[15] After it receives a motion filed under one or more of these rules within this 10-day time limit, the court obviously retains jurisdiction beyond the 10 days to rule on the motion. A final judgment that contains injunctive relief may give the court jurisdiction to enforce such relief. Such retention of jurisdiction is not implicated in any of the cases now before us.

explained in Part II.A, <u>supra</u>, Rule 60(b) and the independent actions its savings clause preserves give the court the power to set aside a judgment whose integrity is lacking. What Rule 60(b) and these independent actions <u>do not</u> provide is a means for litigants to obtain the district court's reconsideration of the claims and defenses its judgment adjudicated. <u>See</u> <u>Am. Bankers Ins. Co. v. Northwestern Nat'l Ins. Co.</u>, 198 F.3d 1332, 1338 (11th Cir. 1999) ("[T]he law is clear that Rule 60(b) may not be used to challenge mistakes of law which could have been raised on direct appeal[,]" the implication being that all that the Rule provides is a vehicle for attacking the integrity of the district court's judgment); <u>Travelers Indem. Co. v. Gore</u>, 761 F.2d 1549, 1552 (11th Cir. 1985) ("[T]he plaintiff cannot use an independent action as a vehicle for the relitigation of issues."); <u>Bankers Mortgage Co.</u>, 423 F.2d at 79 (5th Cir. 1970) ("The independent action can not be made a vehicle for the relitigation of issues."); <u>Donovan v. Sovereign Sec. Ltd.</u>, 726 F.2d 55, 60 (2d Cir. 1984) ("[Litigants] may not use proceedings seeking relief from or modification of a judgment under F. R. Civ. P. 60 simply to relitigate matters settled by the original judgment. . . ."); <u>Kustom Signals, Inc. v. Applied Concepts, Inc.</u>, 247 F. Supp. 2d 1233, 1235 (D. Kan. 2003) ("Like a motion to reconsider, a motion under Rule 60(b) is not a second opportunity for the losing party to make its

strongest case, to rehash arguments, or to dress up arguments that previously failed.").

What the foregoing discussion establishes, I believe, is that a legally significant analogy cannot be drawn between a motion to recall an appellate mandate and a motion or independent action brought under Rule 60(b). None of the motions or independent actions authorized by Rule 60(b) should assert that the petitioner's underlying criminal conviction or sentence is infirm on the basis of a constitutional claim that was or was not included in the habeas petition the petitioner litigated to final judgment in the district court. If such motions or independent actions present a constitutional claim, they must be dismissed unless the court of appeals has granted the petitioner leave to file the same in district court. The motions to recall the mandate discussed in Calderon, by comparison, seek the adjudication of constitutional claims; they do not constitute collateral attacks on the integrity of the court of appeals's judgment.[16] Hence, they differ from true Rule 60(b) motions and must be denied.

---

[16] If the district court judgment the court of appeals affirms is subject to collateral attack, the attack must be mounted in the district court via Rule 60(b), an independent action brought under the aegis of the Rule, or the implementation of one of the exceptions to the mandate rule.

D.

Having distinguished between SSHPs and Rule 60(b) motions, I nonetheless

share the majority's general concern that petitioners will disguise the former as the

latter to avoid AEDPA's restrictions. We must craft a holding that curtails this

abuse.

We do not write on a blank slate here, as virtually all of our sister circuits

have addressed this issue.[17] Some circuits have held that all Rule 60(b) motions are

SSHPs, regardless of the nature of the claims presented. See Lopez v. Douglas, 141

F.3d 974, 975 (10th Cir. 1998) (holding without extended discussion that the

petitioner's Rule 60(b) motion was an SSHP under AEDPA); Gee v. Shillinger,

1998 U.S. App. LEXIS 2644, *3-4 (10th Cir. 1998) (holding, without specifying

exceptions, that Rule 60(b) motions are SSHPs under AEDPA); McQueen v.

Scroggy, 99 F.3d 1302, 1335 (6th Cir. 1996) (holding in a pre-AEDPA context that

"a Rule 60(b) motion is the practical equivalent of a successive habeas corpus

petition and therefore is subject to a cause and prejudice analysis"). The Second

Circuit, on the other hand, appears to have held that Rule 60(b) motions should

never be treated as SSHPs. Rodriguez, 252 F.3d at 198 ("We now rule that a

---

[17] I am primarily concerned with the post-AEDPA cases, but also treat the pre-AEDPA cases from circuits that have not since ruled on the issue. For a collection of the pre-AEDPA cases, see 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure 1533 n.16 (4th ed. 2001).

motion under Rule 60(b) to vacate a judgment denying habeas is not a second or successive habeas petition and should therefore be treated as any other motion under Rule 60(b).").[18]

Most of our sister circuits, however, have come down somewhere in the middle, holding that district courts may recharacterize Rule 60(b) motions as SSHPs under some circumstances. These circuits fall into two subsets. The first subset consists of courts that have declined to hold that all Rule 60(b) motions are SSHPs, but that have not articulated a rule for distinguishing these devices.[19] See Boyd v. United States, 304 F.3d 813, 814 (8th Cir. 2002) (directing district courts to "conduct[] a brief initial inquiry to determine whether the allegations in the Rule 60(b) motion in fact amount to a second or successive collateral attack");

---

[18] Although other courts have characterized the Second Circuit's position as absolute, see, e.g., Rodwell, 324 F.3d at 69 (stating that "[t]he Second Circuit has ruled categorically" that no Rule 60(b) motions are SSHPs); Dunlap v. Litscher, 301 F.3d 873, 876 (7th Cir. 2002) ("The Second Circuit[] . . . in Rodriguez . . . did not limit its ruling to [true Rule 60(b) motions].), I do not wish to mischaracterize its holding. Even after Rodriguez, I am unable to say for certain that a litigant in the Second Circuit could maintain a purported Rule 60(b) motion whose true aim is to challenge the underlying conviction on constitutional grounds.

[19] The Third and Fifth Circuits may also fall within this category, but their precedent is unclear. See United States v. Edwards, 309 F.3d 110, 113 (3d Cir. 2002) (holding without extended discussion that even if the district court should have construed the petitioner's motion under 18 U.S.C. § 3582(c)(2) as a Rule 60(b) motion, the court would nonetheless have had to recharacterize the Rule 60(b) motion as an SSHP); Hess, 281 F.3d at 214-15 (noting "the parties['] dispute [as to] whether or not [the Fifth Circuit] has completely closed the door on Rule 60(b) motions in habeas cases—in other words whether all such Rule 60(b) motions must be construed as successive petitions," but declining to decide the circumstances under which a Rule 60(b) motion might be proper).

Thompson v. Calderon, 151 F.3d 918, 921 & n.3 (9th Cir. 1998) ("We do not foreclose the possibility [that] a 60(b) motion filed after denial of an initial petition for habeas corpus would not have to comply with the AEDPA's successive petition requirements. . . . [A] bright line rule equating all 60(b) motions with successive habeas petitions would be improper."). The second subset consists of courts that have developed various, if general, rules for governing Rule 60(b) motions. See United States v. Winestock, 340 F.3d 200, 206 (4th Cir. 2003) ("[D]istrict courts must treat Rule 60(b) motions as successive collateral review applications when failing to do so would allow the applicant to 'evade the bar against relitigation of claims presented in a prior application or the bar against litigation of claims not presented in a prior application.'" (citation omitted)); Rodwell, 324 F.3d at 70 ("When the motion's factual predicate deals primarily with the constitutionality of the underlying state conviction or sentence, then the motion should be treated as a second or successive habeas petition. This situation should be distinguished from one in which the motion's factual predicate deals primarily with some irregularity or procedural defect in the procurement of the judgment denying habeas relief. That is the classic function of a Rule 60(b) motion."); Dunlap v. Litscher, 301 F.3d 873, 875 (7th Cir. 2002) ("It is only when Rule 60(b) conflicts with AEDPA that it is unavailable to a prisoner.").

101

The majority today places our court near the middle ground. But rather than adopting a flexible rule that would permit district courts to honor AEDPA's aims without punishing true Rule 60(b) movants, the majority specifies a hard-and-fast exception to its holding that all Rule 60(b) motions are SSHPs: motions to remedy fraud upon the court under Rule 60(b)(3).

The majority is somehow convinced that the only way a habeas petitioner who seeks Rule 60(b) relief will be able to avoid AEDPA's restrictions on SSHPs is by asserting that the district court's judgment was fraudulently obtained. To be sure, "fraud, . . . misrepresentation, or other misconduct [perpetrated by the respondent]" is <u>one</u> valid ground for seeking relief from a habeas judgment under Rule 60(b) without implicating § 2244's requirements, as many of our sister circuits have recognized. See <u>Winestock</u>, 340 F.3d at 207; <u>Dunlap</u>, 301 F.3d at 876; <u>Rodriguez</u>, 252 F.3d at 199; <u>Thompson</u>, 151 F.3d at 921 n.3. Obviously, such misconduct is not the only reason to doubt the legitimacy of a habeas judgment.

Rather than follow the majority's approach, we should recognize that Rule 60(b) survives in AEDPA's wake and fashion a holding that accounts for the essential differences between Rule 60(b) motions and SSHPs. In this vein, I would adopt substantially the First Circuit's solution to our problem:

> The inquiry must proceed case by case. The [district] court must examine the factual predicate set forth in support of a particular

motion. When the motion's factual predicate deals primarily with the constitutionality of the underlying state [or federal] conviction or sentence, then the motion should be treated as a second or successive habeas petition. This situation should be distinguished from one in which the motion's factual predicate deals primarily with some irregularity or procedural defect in the procurement of the judgment denying habeas relief. That is the classic function of a Rule 60(b) motion, and such a motion should be treated within the usual confines of Rule 60(b).

Rodwell, 324 F.3d at 70 (citation omitted); cf. Lazo v. United States, 314 F.3d 571, 573 (11th Cir. 2002) (vacated panel opinion) (concluding that Lazo's purported Rule 60(b) motion was the "functional equivalent of a successive § 2255 motion").

To further guide the district courts, I would repeat the observation I made in my dissent from the Mobley panel:[20]

[I]f a petitioner[] who already has been denied federal habeas corpus relief files a motion that presents new constitutional claims to the district court, this motion should be considered a "second or successive" habeas corpus petition—even if the petitioner calls it a Rule 60(b) motion. Likewise, if the petitioner [br]ought a "second or successive" habeas corpus petition to raise questions about the

---

[20] I would also reemphasize that district courts should treat Rule 60(b)(6) motions with special caution. Rule 60(b)(6) allows a court to grant relief from a judgment for "any other reason" beyond those specified in Rule 60(b)(1)–(5). See Klapprott, 335 U.S. at 614-15, 69 S. Ct. at 390 ("[I]n simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."). As the Supreme Court has held, "[t]o justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." Pioneer Inv. Serv. Co. v. Brunswick Ass'n Ltd. P'ship, 507 U.S. 380, 393, 113 S. Ct. 1489, 1497, 123 L. Ed. 2d 74 (1993). The amorphousness of this subsection makes it particularly prone to abuse. As I noted in Mobley, "[a] district court that uses this 'catch-all' provision to allow a habeas corpus petitioner to obtain review of a new constitutional claim will . . . eviscerate the provisions of AEDPA." 306 F.3d at 1102 n.3 (Tjoflat, J., dissenting).

> integrity of a prior habeas corpus proceeding . . . then the court should review the filing under the standards for Rule 60(b) motions and not under the strictures of 28 U.S.C. 2244(b)(2).

306 F.3d at 1101-02 (Tjoflat, J., dissenting); accord Winestock, 340 F.3d at 207 ("[A] brand-new, free-standing allegation of constitutional error in the underlying criminal judgment will virtually always implicate the rules governing successive applications. Similarly, new legal arguments or proffers of additional evidence will usually signify that the prisoner is not seeking relief available under Rule 60(b) but is instead continuing his collateral attack on his conviction or sentence." (citations omitted)). If the court finds that the motion states a valid ground for relief under Rule 60(b), it may entertain the motion. If it instead determines that the filing is an SSHP parading as a Rule 60(b) motion, then § 2244 applies.[21] In the latter case, the district court may not entertain the SSHP without our authorization. 28 U.S.C. § 2244(b)(3)(A). If the petitioner has not obtained our authorization, the district court must reject his motion for lack of subject matter jurisdiction. See Winestock, 340 F.3d at 208-09 (vacating the district court's denial of the petitioner's purported Rule 60(b) motion and remanding with the instruction to dismiss for lack of

---

[21] In discussing how a district court should treat true Rule 60(b) motions and SSHPs masquerading as Rule 60(b) motions, I omit reference to what might be termed "mixed" Rule 60(b) motions—motions that are in part true Rule 60(b) motions and in part SSHPs. A district judge should have no difficulty weeding out the SSHP allegations, disposing of them for lack of jurisdiction, and then passing on the merits of the allegations that are actually cognizable under the Rule.

jurisdiction); <u>Rodwell</u>, 324 F.3d at 73 (affirming the district court's dismissal of an SSHP dressed as a Rule 60(b) motion); <u>Dunlap</u>, 301 F.3d at 876-77 (holding that the district court erred in failing to recharacterize a Rule 60(b) motion as an SSHP and reversing with the instruction to dismiss for lack of jurisdiction); <u>United States v. Rich</u>, 141 F.3d 550, 554 (5th Cir. 1998) (affirming the district court's dismissal of the petitioner's filing for lack of jurisdiction).

Although "this test [would not] operate with mathematical precision," <u>Rodwell</u>, 324 F.3d at 71, it elevates substance over form and satisfies the independent aims of AEDPA and Rule 60(b). Like the First Circuit, I am "confident that . . . the district courts [would] be able to sift wheat from chaff without undue difficulty." <u>Id.</u>

### III.

Pursuant to 28 U.S.C. § 2253(c)(1),

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.[22]

---

[22] The petitioner must first seek a COA from the district court. 11th Cir. R. 22-1(a). If the district court denies a COA, the petitioner may seek one from our court. Fed. R. App. P. 22(b)(1). Furthermore,

After reducing Rule 60(b)'s scope to claims of fraud, the majority holds that § 2253 requires habeas petitioners to obtain a COA before appealing the denial of Rule 60(b)(3) relief. I cannot ascribe to this holding because § 2253's plain language discloses no such requirement. Neither can I ascribe to the majority's reliance on the decisions in other circuits that might appear to, but do not, support its position.

A.

Courts of appeals have jurisdiction "of appeals from all final decisions of the district courts . . . ." 28 U.S.C. § 1291. A litigant faced with an unfavorable district court judgment may make a timely appeal of that judgment and may also file a Rule 60(b) motion for relief with the district court either before or after filing his appeal. See Stone v. Immigration and Naturalization Serv., 514 U.S. 386, 401, 115 S. Ct. 1537, 1547, 131 L. Ed. 2d 465 (1995). "The denial of the [Rule 60(b)] motion is appealable as a separate final order . . . ." Id. Thus, an order adjudicating a Rule 60(b) motion, in addition to a final judgment adjudicating the case as a whole, is an appealable, final decision.

---

if the district court denies a [COA], and at the time of docketing the appeal in [our court] the [petitioner] has not filed a renewed application for a [COA] in [our court], the application denied by the district court . . . shall be construed by [our court] as a renewed application for a [COA].

11th Cir. R. 22-1(c)(2).

106

Although our appellate jurisdiction extends to all final decisions, § 2253's COA requirement does not. As a textual matter, § 2253 requires a COA to appeal only <u>one</u> final order in a habeas corpus proceeding, not all orders. <u>See</u> 28 U.S.C. § 2253(c)(1) (providing that the COA requirement applies to "<u>the</u> final order" in proceedings attacking state or federal convictions or sentences (emphasis added)).

In habeas cases involving more than one appealable order, such as orders disposing of Rule 60(b) motions or other postjudgment motions, § 2253's requirement of a COA as to the appeal of just <u>one</u> final order clearly extends to the petitioner's efforts, if any, to appeal the court's final judgment denying him habeas relief. The district court's judgment on the habeas petition is seemingly the only "final decision" that could deny the petitioner's constitutional challenge to his conviction or sentence. Therefore, that judgment is the only decision that § 2253(c)(2) seems to address; it is the only final order that could serve as the basis for the petitioner's "substantial showing of the denial of a constitutional right[,]" the showing he must make to obtain the COA. In contrast to judgments denying habeas relief, final orders denying a Rule 60(b) motion do not adjudicate a constitutional challenge to the movant's conviction or sentence. They simply state

that the district court will not exercise its discretion to set aside the final judgment it entered.[23]

I agree with the majority's statement that the word "the" can sometimes be read in the plural. In certain circumstances, singular terms can be construed in the plural. See 1 U.S.C. § 1 ("[U]nless the context indicates otherwise[,] words importing the singular include and apply to several persons, parties, or things . . . ."). "But obviously this rule is not one to be applied except where it is necessary to carry out the evident intent of the statute." First Nat'l Bank in St. Louis v. Missouri, 263 U.S. 640, 657, 44 S. Ct. 213, 215, 68 L. Ed. 486 (1924) (interpreting the predecessor rule that "words importing the singular number may extend and be applied to several persons or things"); see also Toy Mfrs. of America, Inc. v. Consumer Prods. Safety Comm'n, 630 F.2d 70, 74 (2nd Cir. 1980) (holding that 1 U.S.C. § 1 does not apply "except where it is necessary to carry out the evident intent of the statute"). AEDPA evinces no legislative intent to apply the COA requirement to more than one order. Nor does it evince legislative intent to apply the § 2253(c)(2) requirement of a "substantial showing" to an order that does not determine whether the petitioner has suffered the denial of a constitutional right. While AEDPA clearly limits appeals of the denial of habeas relief, there is nothing

---

[23] This point is discussed at length in Part IV, infra.

in the text of the Act that narrows the reach of Rule 60(b) or the independent collateral attacks the Rule authorizes. Thus, interpreting "the" in the plural would be improper in this context, and § 2253 must apply to one final order: the district court's final judgment on the habeas petition.

B.

I respectfully decline to join in the majority's reliance on the decisions of our sister circuits for the proposition that the COA requirement of § 2253 extends to appeals of the denial of Rule 60(b) relief. By and large, the courts, in reaching these decisions, simply assumed that § 2253 applies in the Rule 60(b) context. Moreover, most of these cases involve obvious misuses of the Rule and are therefore inapposite to circumstances involving true Rule 60(b) motions. See Rutledge v. United States, 230 F.3d 1041, 1052-53 (7th Cir. 2000) (considering an appeal from the denial of a Rule 60(b) motion based on an ineffective assistance of counsel claim that the petitioner "should have raised . . . in his § 2255 motion"); Morris v. Horn, 187 F.3d 333, 343 (3d Cir. 1999) ("What [the habeas petitioner] is attempting to raise as a Rule 60(b) motion is in fact what he should have brought as an appeal" from the district court's dismissal of his habeas petition for failure to exhaust state remedies.); Zeitvogel v. Bowersox, 103 F.3d 56, 57 (8th Cir. 1996) (refusing to grant a COA to review the denial of the petitioner's purported Rule

109

60(b) motion because the motion merely presented a constitutional claim, ineffective assistance of counsel, that the petitioner had previously raised in a motion for leave to file an SSHP).[24] I suggest that a fair reading of the opinions in these cases indicates that none of the motions at issue was a true Rule 60(b) motion.

Langford v. Day, 134 F.3d 1381, 1382 (9th Cir. 1998), also relied on by the majority, remains as a possible outlier. In that case, the petitioner, Langford, was convicted of capital murder by a Montana court and sentenced to death. At the time sentence was imposed, Montana law prescribed hanging or lethal injection as the means of execution. The trial court allowed the petitioner to choose the means of execution, and he chose hanging. In challenging his sentence on direct appeal and on federal habeas corpus, the petitioner unsuccessfully claimed that hanging violated the Eighth Amendment. Prior to the date set for his execution, "the Montana legislature abolished hanging, leaving only lethal injection as a means of execution." Id. at 1382. The petitioner thereafter filed a Rule 60(b) motion in the district court, alleging that this change in Montana law authorized the court to revisit its judgment denying his petition for habeas corpus relief. The court denied his motion, and the petitioner filed a notice of appeal.

---

[24] The majority also relies on Kellogg v. Strack, 269 F.3d 100 (per curiam) (2d Cir. 2001). The grounds for the petitioner's Rule 60(b) motion in that case are unclear from the court's opinion.

The court of appeals interpreted its pre-AEDPA precedent, Lynch v.

Blodgett, 999 F.2d 401, 402-03 (9th Cir. 1993), to preclude it from entertaining a

petitioner's appeal absent a certificate of probable cause (the COA's pre-AEDPA

analog). In the court's view, AEDPA required a COA in all circumstances in which

a certificate of probable cause was previously required. Because the petitioner

could obtain neither a COA nor a certificate of probable cause, the court did not

decide whether AEDPA or pre-AEDPA law applied.[25] In other words, the denial of

a meritorious constitutional claim was required in either case, and petitioner failed

to show this. Langford, 134 F.3d at 1382.

The Ninth Circuit's decision in Lynch, the basis for Langford's result, relied

on this circuit's decision in Lindsey v. Thigpen, 875 F.2d 1509, 1512 (11th Cir.

1989) (per curiam). Lindsey, however, is inapposite to Langford and to the three

cases we decide today. First, in Lindsey, a pre-AEDPA case, we had no

opportunity to consider AEDPA's SSHP restrictions. Second, the petitioner in

Lindsey did not file a true Rule 60(b) motion, even though he labeled it as such.

The petitioner alleged in his motion, which challenged the constitutionality of his

_____

[25] While Langford is not entirely clear on this issue, I assume that AEDPA's effective date fell after the petitioner filed his motion but before he filed his notice of appeal. The Supreme Court had not settled the question whether AEDPA's COA requirement applied in this circumstance until after 1998, the year of the Langford decision. See Slack v. McDaniel, 529 U.S. 473, 481, 120 S. Ct. 1595, 1602, 146 L. Ed. 2d 542 (2000) (holding that "§ 2253 applies to appellate proceedings initiated post-AEDPA[,]" even when the underlying habeas proceeding was initiated a district court pre-AEDPA).

111

death sentence, that (1) "the district court should reconsider his claim regarding the 'especially heinous, atrocious or cruel' aggravating factor in light of [Maynard v.] Cartwright[, 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988)]"; and (2) "the trial judge's override of the jury's recommendation of life imprisonment violated the sixth amendment . . . ." Lindsey, 875 F.2d at 1511. Because his filing was really an SSHP in Rule 60(b)'s clothing, the petitioner would today have to obtain leave of this court under § 2244(b)(3) before presenting the SSHP to the district court.[26]

In Langford, 134 F.3d at 1382, by contrast, at least in the Ninth Circuit's view, the petitioner's so-called Rule 60(b) motion "sought relief from a judgment of the district court denying Langford's petition for habeas corpus . . . ."[27] It did not assert constitutional claims attacking his underlying conviction or sentence. Consequently, his motion was not an SSHP, and no COA should have been required to appeal its denial. Ultimately, the Langford court made the same error our panel

---

[26] This conclusion is not, as the majority suggests, in tension with my observation that § 2253 requires a COA only to appeal the district court's judgment denying habeas relief. See Maj. op. at 27 nn. 3-4. An appeal of a district court's dismissal of an SSHP (clothed as a Rule 60(b) motion) for lack of § 2244 leave to proceed requires no COA because it involves only a preliminary jurisdictional inquiry: whether the district court was correct in concluding that it did not have a true Rule 60(b) motion, which it should entertain, before it. Of course, if a petitioner filed an SSHP in the district court after obtaining § 2244 leave, the district court's denial of the SSHP would be "the final order in a habeas corpus proceeding" under § 2253(c)(1). The petitioner would therefore need a COA to appeal the district court's denial.

[27] We rely on the Ninth Circuit's view as to the content of the petitioner's claims. Obviously, the record of that case is not before us.

112

made in <u>Mobley</u>: it failed to comprehend that <u>Lindsey</u> and cases like it are limited to misuses of Rule 60(b).

IV.

Before suggesting the dispositions the court should make in these consolidated appeals, I think it useful to discuss the practical implications of the majority holdings. To recap, the majority holds, first, that (with the exception of a motion filed under Rule 60(b)(3)) to obtain relief under Rule 60(b), a petitioner must apply to this court for leave to file his motion. In doing so, he must satisfy the requirements of § 2244(b)(2), meaning that:

> (A) . . . the claim [set forth in his motion] relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense.

Thus, the majority separates Rule 60(b) motions into two groups: first, Rule 60(b)(3) motions, which are to be presented to the district court; and second, Rule 60(b)(1), (2), and (4)–(6) motions, which the majority treats as SSHPs that must be presented to this court as § 2244(b)(2) applications for leave to seek relief in the district court. The majority next holds that before the petitioner can appeal the

113

district court's denial of his Rule 60(b)(3) motion, he must obtain a COA. This means that his application for a COA must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Given these holdings, I now illustrate what Rule 60(b) litigation will look like from now on.

With respect to the Rule 60(b)(3) motions, the majority opinion does not come into play until the district court has denied relief and the petitioner seeks to appeal the denial. The petitioner cannot appeal unless and until he obtains a COA by making the requisite § 2253(c)(2) "substantial showing of the denial of a constitutional right." With respect to motions seeking relief under Rule 60(b)(1), (2), and (4)–(6), the majority opinion comes immediately into play. The petitioner must apply to this court for leave to proceed in the district court; to obtain such leave, he must satisfy the requirements of § 2244(b)(2)(A), (B), quoted above. In short, whether the petitioner is seeking relief on these Rule 60(b) grounds or under Rule 60(b)(3), his motion will have to convince the court that he is presenting a constitutional challenge to his underlying conviction or sentence.

In examining his motion for a constitutional claim, the court will find none. Why? Because the petitioner has filed a true Rule 60(b) motion, and such motions do not contain constitutional claims. See supra Part II.B. The petitioner might obtain a COA in the 60(b)(3) context only if the court—the district court or this

court—looks beyond the Rule 60(b) motion to his habeas petition to determine whether the petitioner there presented a constitutional claim that satisfies § 2253(c)(2)'s "substantial showing" requirement. The petitioner will never prevail on a motion under Rule 60(b)(1), (2), (4), (5), or (6) because the petitioner's application to this court for leave[28] to file such a motion will not satisfy either of § 2244(b)(2)'s alternative requirements.[29] Why? Because the text of those requirements, taken literally, precludes the court from looking beyond the Rule 60(b) motion by limiting the court to a consideration of "claim[s] presented in a

---

[28] Suppose the petitioner does not seek § 2244(b)(3)(A) leave of this court to file in the district court a Rule 60(b) motion under subparts (1), (2), (4), (5), or (6) but, instead, files the motion in the district court. The district court denies the motion, and the petitioner files a notice of appeal, invoking our 28 U.S.C. § 1291 jurisdiction. Would the majority require the issuance of a COA as a condition precedent to entertaining the appeal, or would the majority permit the appeal to proceed without a COA? I do not find an explicit answer to this question in the majority opinion. The majority's disposition of the Gonzalez case, however, implies that a COA must be obtained. Gonzalez sought relief from a habeas judgment in the district court on a Rule 60(b)(6) ground, namely that a subsequent decision of the Supreme Court cast doubt on that habeas judgment. The district court denied his Rule 60(b) motion, and Gonzalez filed a notice of appeal. In disposing of this case, the majority now grants a COA and then affirms the district court because the Rule 60(b) motion did not claim fraud, which is the only Rule 60(b) claim that remains available to collaterally attack the denial of a habeas corpus petition. I question the wisdom of having this court expend its resources deciding to issue a COA and then passing on the merits of Gonzalez's appeal. Instead of taking these steps, it would be more efficient simply to dismiss the appeal on the ground that a Rule 60(b) motion is no longer available. Had the district court not granted Gonzalez leave to appeal IFP and he applied to this court for such leave, this court could have denied it on the ground that the appeal was frivolous.

[29] Nor could a true Rule 60(b) motion satisfy the comparable criteria of § 2255, which applies to federal prisoners. See supra note 5. As true Rule 60(b) motions filed in a § 2255 proceeding would challenge only the § 2255 judgment, no such motion could assert that the prisoner's conviction or sentence was imposed "imposed in violation of the Constitution or laws of the United States."

second or successive habeas corpus application under section 2254 that was not presented in a prior application. . . .”

The bottom line of this discussion is twofold. First, the majority completely eviscerates Rule 60(b)(1), (2), and (4)–(6). As they apply to habeas petitioners, these provisions are now off the books in the Eleventh Circuit.[30] Second, the majority does away with a significant part of a petitioner's right to prosecute a true Rule 60(b)(3) motion. The petitioner may file the motion, but if the district court denies it, whether he will obtain a COA and thus be able to appeal the denial is problematic.[31]

---

[30] In writing Rule 60(b)(1), (2), (4)–(6) off the books, what the majority seems to be holding is that Congress, in enacting AEDPA, repealed these provisions by implication. But “[i]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.” Morton v. Mancari, 417 U.S. 535, 550, 94 S. Ct. 2474, 2482, 41 L. Ed. 2d 290 (1974). Tellingly, Congress was not blind to the effects AEDPA would have on the rules of procedure; for example, focusing on the relevant Federal Rules of Appellate Procedure, Congress amended Federal Rule of Appellate Procedure 22. See AEDPA of 1996, Pub. L. No. 104-132, 110 Stat. 1214 § 103. Congress did nothing, however, to Rule 60(b); rather, it simply let the Rule stand as is. In allowing Rule 60(b) to stand while limiting the availability of habeas relief under AEDPA, Congress did not create an “irreconcilable” situation. There is nothing irreconcilable about cutting down on SSHPs and at the same time permitting the district courts to set aside a habeas judgment that should not stand under Rule 60(b).

[31] I note here that the petitioner's respondent (the State) does not have to obtain a COA as a condition precedent to appealing a district court's order setting aside the final order (that denied the petitioner habeas relief). AEDPA extends the COA requirement only to petitioners, not to respondents. Section 103 of AEDPA expressly amended the Federal Rules of Appellate Procedure to guarantee this result. See AEDPA of 1996, Pub. L. No. 104-132, 110 Stat. 1214 § 103; Fed. R. App. P. 22(b)(3) (“A certificate of appealability is not required when a state or its representative or the United States or its representative appeals.”).

I further explain this second consequence of the majority opinion by examining four hypothetical scenarios. These scenarios consider how a court's decision whether to grant a COA as to a judgment denying a habeas petition would affect the decision whether to grant a COA as to an order denying a Rule 60(b)(3) motion. Before I begin, though, two observations must be made about the assumptions underlying the scenarios.

First, a Rule 60(b) motion that states a new constitutional claim is an SSHP, and the district court, lacking jurisdiction to entertain it, must reject it on that ground.[32] See supra Part II.D. Thus, in discussing the implications of the majority's holdings, I refer to true Rule 60(b) motions (which by definition do not state a constitutional claim).

Second, because a true Rule 60(b)(3) motion does not contain a constitutional challenge to the petitioner's state court conviction or sentence, the question becomes: where would the COA court look to determine whether the petitioner has made "a substantial showing of the denial of a constitutional right?" The majority's answer to this question is that the court—the district court or this court—must look somewhere else. In deciding these appeals, the majority chooses to examine two sources. In Lazo, for example, the majority examines the allegations of the

_____

[32] To obtain relief in the district court, therefore, the petitioner must first obtain leave of this court pursuant to § 2244(b)(3)(A).

117

petitioner's motion, which was brought under "Rule 60(b)(4) and/or (6)." The motion was an SSHP because it alleged the denial of constitutional rights. Finding no merit in the constitutional claims the motion presented, the majority denies a COA. In Gonzalez, however, the majority faces a true Rule 60(b)(6) motion. Because the Rule 60(b) motion does not contain constitutional claims, the majority looks not to the motion but to the allegations of the petitioner's habeas petition for evidence of the denial of a constitutional right. The majority concludes that such evidence satisfies the constitutional-claim element of § 2253(c)(2) because the majority "cannot say that Gonzalez's claim is not debatable among jurists of reason." Maj. op. at 32. Having so concluded, the majority grants a COA and then affirms the district court's decision. Finally, in Mobley, the majority looks, as in Lazo, to the allegations of the Rule 60(b) motion, concludes that such allegations satisfy § 2253(c)(2)'s "substantial showing," grants a COA, and then affirms the district court's decision.

I now turn to the four hypothetical scenarios, each involving a true Rule 60(b)(3) motion, to illustrate how the majority's holding—that the petitioner must obtain a COA in order to appeal the denial of his motion—will play out.

In the first scenario, the petitioner obtained a COA to appeal the denial of habeas relief, and we affirmed on appeal. The petitioner then moved the district

118

court pursuant to Rule 60(b)(3) to set aside its decision on the ground that is decision was obtained through fraud. The district court denied the motion. Can the petitioner obtain a COA to appeal? Our earlier affirmance of the district court's rejection of the petitioner's constitutional claims should prompt the district court and this court to say that the petitioner cannot satisfy § 2253(c)(2)'s requirement that he make a "substantial showing of the denial of a constitutional right." If a COA were to issue, it would cast doubt on the correctness of our earlier decision affirming the district court's denial of habeas relief; hence, issuing a COA is not in the cards. **Result: In this situation, the petitioner never obtains a COA to appeal.**

In the second scenario, the petitioner sought to appeal the district court's order denying habeas relief but failed to obtain a COA. The petitioner thereafter moved the district court to set aside its decision under Rule 60(b)(3), and the court denied the motion. Can a COA issue so that the petitioner can appeal the ruling? Yes, but in issuing the COA, the court—the district court or this court—would be casting doubt on the correctness of the earlier decision denying the COA. Absent a sound reason for effectively overruling the prior COA denial, I suggest that a COA would not issue. **Result: In this situation, the petitioner never obtains a COA.**

In the third scenario, this court granted a COA, and while the petitioner's appeal was pending, the petitioner moved the district court to set aside its decision under Rule 60(b)(3).[33] The court denied the motion. Is a COA likely to issue? Since the district court or this court previously found that the petitioner had made a § 2253(c)(2) "substantial showing of the denial of a constitutional right" and the appeal is still pending, I suggest that a COA would issue and the petitioner's appeal of the Rule 60(b)(3) ruling would proceed.[34] **Result: In this situation, the petitioner obtains a COA**.

In the fourth scenario, the district court denied habeas relief, and the petitioner did not appeal. After the thirty-day appeal period expired, the petitioner filed a Rule 60(b)(3) motion. The court denied the motion, and the petitioner applied for a COA. He obtains a COA if the allegations of his habeas petition satisfy § 2253(c)(2)'s "substantial showing" criterion. **Result: In this situation, the petitioner might obtain a COA.**

---

[33] The district court has jurisdiction to consider the Rule 60(b)(3) motion even though the petitioner's appeal of the denial of habeas relief is pending. <u>Stone v. Immigration and Naturalization Serv.</u>, 514 U.S. 386, 401, 115 S. Ct. 1537, 1547, 131 L. Ed. 2d 465 (1995) ("Either before or after filing his appeal, the litigant may also file a Rule 60(b) motion for relief with the district court. The denial of the motion is appealable as a separate final order, and if the original appeal is still pending it would seem that the court of appeals can consolidate the proceedings.").

[34] This scenario is not likely to occur. In fact, in over 28 years on this court and its predecessor Fifth Circuit, I have never encountered it.

In sum, these four scenarios indicate that under the majority's § 2253(c)(2) holding, the merit of a petitioner's Rule 60(b)(3) motion will have no bearing on the court's decision on whether to grant a COA. Under § 2253(c)(2), the only question for the COA court is whether the petitioner has "made a substantial showing of the denial of a constitutional right." All that a true Rule 60(b)(3) motion alleges is that the petitioner's adversary obtained a final order through fraud from the district court. It does not address the sufficiency of the petitioner's claim that his conviction or sentence was obtained in violation of the Constitution.

## V.

Having expressed my disagreement with the majority's principal holdings, I turn to the appeals before us, Lazo, Gonzalez, and Mobley.

## A.

On January 2, 2002, after Emile Lazo had lost his first § 2255 motion and failed to obtain a COA to appeal, he "filed a motion and brief, which he labeled as being pursuant to Fed. R. Crim. P. 12(b)(2) and Fed. R. Civ. P. 60(b)(4), (6), seeking relief from the district court's previous denial of his § 2255 motion." Lazo

121

v. United States, 314 F.3d 571, 572 (11th Cir. 2002) (vacated panel opinion).  In

this motion, Lazo claimed that

> his conviction is void because the district court lacked subject matter
> jurisdiction to hear his case and impose a sentence because the
> indictment was insufficient[,] the grand jury failed to allege an
> interference with interstate and/or foreign commerce under 21 U.S.C.
> § 801, failed to give him "notice" as to the penalty against which he
> must defend in violation of the Sixth Amendment, and failed to give
> jurisdiction to the sentencing court to impose his sentence under 21
> U.S.C. § 841(b)(1)(A) by failing to establish an interference with
> interstate commerce.

Id. at 573.  On March 1, 2002, the district court denied the motion without

explanation—and without indicating whether it was treating Lazo's filing as a true

Rule 60(b) motion or as an SSHP.  On April 30, 2002, Lazo filed a notice of

appeal[35] and applications for leave to proceed in forma pauperis ("IFP") and for a

COA.  The court granted his application for IFP but denied a COA.

We thereafter noted probable jurisdiction and the appeal was briefed.

Addressing the threshold question the appeal posed—whether the motion Lazo filed

in the district court should be treated as a second or successive motion under 28

U.S.C. § 2255—a panel of this court answered in the affirmative.  In the panel's

view, Lazo's motion was "really a successive § 2255 motion in Rule 60(b)'s

clothing," since it merely "[made] new arguments attacking the validity of [the]

---

[35]  Lazo had 60 days from the date of the district court's decision to file a notice of
appeal.  See Fed. R. App. P. 4(a)(1)(B).

sentence," and did not articulate a valid ground of relief under Rule 60(b). Id. at

573. Because Lazo had not obtained leave to file a successive petition under 28

U.S.C. § 2244(b)(3)(A),[36] the panel recognized that the district court should have

dismissed Lazo's purported Rule 60(b) motion for lack of jurisdiction. The panel

nonetheless determined that "the district court's denial of [Lazo's] successive

§ 2255 motion [was] a 'final order' in a § 2255 proceeding,'" and that Lazo needed

a COA to appeal that denial. Id. at 575. The panel then construed Lazo's notice of

appeal as a motion for a COA and denied it. Id. at 574-75.[37]

---

[36] Section 2255 states that

[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

The reference to § 2244 is to § 2244(b)(3)(A), which states:

Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

[37] Relying upon Slack v. McDaniel, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000), the panel determined that a COA could not issue because of a "plain procedural bar," i.e., Lazo's failure to seek leave from our court to file a successive petition. Lazo, 314 F.3d at 574.

123

I agree with the panel that Lazo's Rule 60(b) motion was really an SSHP, and that the district court lacked jurisdiction to consider it. Thus, rather than "denying" the motion without explanation—which implied that the court was adjudicating the motion on its merits—the district court should have dismissed it for lack of jurisdiction. The panel, in turn, should have affirmed the district court's judgment on the ground that the district court lacked jurisdiction to entertain Lazo's motion. The majority should also affirm on that ground. Instead, the majority searches for a § 2253(c)(2) showing of "a denial of a constitutional right" and denies a COA, which means that Lazo cannot prosecute his appeal. By operation of law, therefore, the district court's decision stands.

B.

On September 9, 1998, the district court entered a final order dismissing Aurelio Gonzalez's § 2254 petition as time-barred under 28 U.S.C. § 2244(d)(1) because the petition had not been filed within AEDPA's one-year limitations period. Gonzalez v. Sec. for the Dep't of Corr., 317 F.3d 1308, 1310 (11th Cir. 2003). Gonzalez filed a timely notice of appeal and applied for a COA. The district court denied his application; we did likewise on April 6, 2000. Id. at 1310. The consequence of our denial of a COA for Gonzalez was that the district court's final order stood as if we had affirmed it on appeal.

124

On August 2, 2001, Gonzalez, proceeding pro se, "filed a Rule 60(b) motion asking the district court to reconsider its . . . order denying him habeas relief on statute of limitations grounds in light of the intervening Supreme Court decision in Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000), which interpreted the 'properly filed' clause of the tolling provision contained in § 2244(d)(2)." Gonzalez, 317 F.3d at 1310. As I read Gonzalez's somewhat disjointed handwritten motion, he contends that had Artuz been decided before the district court ruled on the timeliness of his habeas petition, the court would not have held it time barred. The district court denied Gonzalez's motion on March 5, 2002, because the "[p]etitioner already ha[d] taken an appeal to the Eleventh Circuit. Accordingly, [the court] no longer ha[d] jurisdiction over his claims." Gonzalez filed a timely notice of appeal, and applications to proceed IFP and for a COA. The district court refused to issue a COA, but it granted Gonzalez leave to appeal IFP.

Gonzalez then applied to this court for a COA. A panel of the court acknowledged that Gonzalez's motion is a true Rule 60(b) motion, filed apparently under Rule 60(b)(6),[38] but, as the majority does today, denied his application. Id. at 1311-13. The panel did so "[f]or two independently adequate reasons." Id. First, it held that under our decision in Mobley v. Head, 306 F.3d 1096 (11th Cir. 2002)

_____

[38] Rule 60(b)(6) authorizes a district court to vacate its final judgment for "any other reason justifying relief from the operation of the judgment."

125

(from which I dissented), "all Rule 60(b) motions in habeas cases are to be treated as second or successive petitions." <u>Gonzalez</u>, 317 F.3d at 1312. Second and alternatively, the panel found that the "extraordinary circumstances" that <u>Ritter v. Smith</u>, 811 F.2d 1398 (11th Cir. 1987), requires as a condition precedent to granting Rule 60(b)(6) relief were absent. <u>Id.</u> at 1312-13. According to the panel, Gonzalez had not shown that

> (1) the erroneous judgment had not been executed; (2) there was only minimal delay between the entry of the judgment the motion sought to set aside and the filing of the motion; and (3) there was a close connection between the case and the case that gave rise to the intervening decision upon which the motion was based.

<u>Id.</u> at 1313.

We review district court denials of Rule 60(b) motions for abuse of discretion. <u>Davis v. Fla. Power & Light Co.</u>, 205 F.3d 1301, 1304 n.4 (11th Cir. 2000). Applying that standard, the panel refused to issue a COA because it "[did] not find it debatable among jurists of reason whether the denial of Gonzalez's Rule 60(b) motion was an abuse of discretion." <u>Gonzalez</u>, 317 F.3d at at 1312. The panel so held even though the district court had not entertained the motion because it mistakenly thought that it lacked jurisdiction to hear it.

I disagree with the panel's decision, notwithstanding that it has been vacated by the order taking this case en banc. I disagree because it is hornbook law that a

district court abuses its discretion when it misapplies the law in reaching its decision. Here, the district court misapplied the law; it erroneously denied the motion because it thought it lacked jurisdiction to hear it. I would therefore vacate the district court's ruling and remand the case with the instruction that the court consider the motion on its merits.

The majority, however, issues a COA[39] and affirms the district court's decision as if the district court had actually entertained Gonzalez's motion and ruled on its merits:

> Gonzalez does not contend that there was any clerical error in the final judgment denying him federal habeas relief, or that fraud was used to obtain that judgment. His sole contention is that the [district court's] judgment [denying habeas relief] was wrong, because the subsequently released [Supreme Court] decision in [Artuz] shows that the "properly filed" language of § 2244(d)(2) was misinterpreted to deny him relief. He is attacking the merits of that decision—the term "merits" referring to the correctness of the decision itself even though the ground of this particular decision was the statute of limitations, an affirmative defense.

---

[39] In deciding whether to issue Gonzalez a COA, the majority looks to his habeas petition (which the district court had denied) to see whether he has made the § 2253(c)(2) substantial showing of the denial of a constitutional right. According to the majority, the petition alleged that Gonzalez's "guilty plea was unintelligent, unknowing, and involuntary based on specific evidence he has proffered." Maj. op. at 32. The majority concludes that Gonzalez satisfies § 2253(c)(2)'s requirement because it "cannot say that Gonzalez's claim is not debatable among jurists of reason." Id. I submit that looking beyond Gonzalez's Rule 60(b) motion—to the habeas petition—for evidence of the denial of a constitutional right is contrary to this court's statement in Gulf Coast Fans, Inc. v. Midwest Elecs. Imp., Inc., 740 F.2d 1499, 1507 (11th Cir. 1984), that our review of a district court's disposition of a Rule 60(b) motion is "restricted to those issues raised in [the movant's] Rule 60(b) motion."

127

> Gonzalez's Rule 60(b) motion is an attempt to relitigate a claim that has already been presented in a prior application [for a COA] and rejected, which means it must be dismissed under § 2244(b)(1). . . . An error of law, even one demonstrated by an intervening decision, does not fit either of the extra-statutory exceptions to the rule we have borrowed from Calderon and announced today.

Maj. op. at 64.

What the majority overlooks is that Gonzalez's Rule 60(b) motion seeks, in legal effect, to invoke an exception to the mandate rule.[40] As I state above, the legal effect of our denial of a COA to review the district court's final decision denying habeas relief is that the district court's final decision stands as if affirmed by this court. That is, for the purposes of the mandate rule, the order we entered denying a COA was the functional equivalent of a mandate from this court affirming the district court's decision.[41]

The district court denied relief on the ground that AEDPA's one-year limitations period barred Gonzalez's § 2254 petition. The mandate rule precludes Gonzalez from asking the district court to reconsider its decision unless he can base his request on one of the exceptions to the rule:

---

[40] The mandate rule and the law of the case doctrine are for our purposes interchangeable. See Piambino v. Bailey, 757 F.2d 1112, 1120 (11th Cir. 1985) ("The 'mandate rule,' as it is known, is nothing more than a specific application of the 'law of the case' doctrine."). Thus, in referring to the mandate rule, I am also referring to the law of the case doctrine.

[41] Another way of looking at this situation is to treat the district court's final decision denying Gonzalez's habeas petition as if Gonzalez had not appealed the decision.

128

The "mandate rule," as it is known, is nothing more than a specific application of the "law of the case" doctrine. This doctrine stands for the proposition that an appellate decision on an issue must be followed in all subsequent trial court proceedings unless the presentation of new evidence or an intervening change in the controlling law dictates a different result, or the appellate decision is clearly erroneous and, if implemented, would work a manifest injustice.

Piambino v. Bailey, 757 F.2d 1112, 1120 (11th Cir. 1985) (citations omitted).

What Gonzalez's Rule 60(b)(6) motion alleges, in so many words, is that "an intervening change in the controlling law dictates a different result." I suggest that Rule 60(b) is the perfect vehicle for invoking the intervening-change-in-the-law exception to the mandate rule.[42] In fact, I can think of no other procedural rule that is as tailor made for this situation as Rule 60(b)(6).

In sum, I disagree with the majority's decision that a COA is required to review the district court's refusal to entertain Gonzalez's motion. I also dissent from its disposition, which is that the district court's ruling stands unreviewable. The message the majority is sending to the district judges of this circuit is that they

---

[42] The majority misapprehends this point to mean that any motion asserting an intervening change in the law is a true Rule 60(b) motion if filed as such. As I have explained, § 2244(b)(2)(A) applies to a collateral attack on a habeas petitioner's sentence or conviction, even if that attack rests upon a change in the law. Rule 60(b), on the other hand, should apply free of AEDPA's limitations when a petitioner attacks the integrity of a district court's habeas judgment. As the panel correctly understood, Gonzalez's motion is a true Rule 60(b) motion, not because it asserts a change in the law, but because it "attacks the prior federal court habeas order denying relief from the state court judgment of conviction and sentence, instead of attacking the underlying conviction and sentence judgment itself . . . ." Gonzalez, 317 F.3d at 1311.

can deny with impunity a Rule 60(b) motion. Can it be that the framers of Rule 60(b) and the rules governing habeas petitions and the Congress that enacted them meant to say that a district court decision not to entertain a petitioner's true Rule 60(b)(6) motion is unreviewable?[43] I think not.

## C.

In Mobley, the majority grants a COA, reviews the petitioner's collateral motion as if he had filed it under Rule 60(b)(3), finds no merit in the motion, and affirms the district court, which denied the motion because it felt bound by Felker v. Turpin, 101 F.3d 657 (11th Cir. 1996).[44] I disagree with the majority's holding that a Rule 60(b)(3) decision cannot be appealed absent a COA. I agree, however, with the majority—for the reasons stated in my dissent to the panel's opinion, Mobley, 306 F.3d at 1097, which the majority appears to adopt—that Mobley's motion fails

---

[43] Had the district court granted Gonzalez the relief he seeks, the State could have appealed the decision without obtaining a COA. See supra note 31.

[44] The district court read Felker as requiring the district courts of this circuit to treat all Rule 60(b) motions as SSHPs. The majority effectively limits this interpretation of Felker's holding by omitting Rule 60(b)(3) motions from mandatory SSHP treatment.

to state a case under Rule 60(b)(3).[45]  I therefore concur in the majority's decision

affirming the district court's judgment.[46]

---

[45] I read the majority as perhaps reaching alternative holdings: (1) if reasonable jurists could construe Mobley's motion as having been filed under Rule 60(b)(3), the motion is meritless; (2) if reasonable jurists could construe Mobley's motion as alleging a new constitutional claim, it is an SSHP and fails to meet the criteria of § 2244(b)(2).

[46] I also concur in the court's decision to deny Mobley's motion to recall the mandate in Mobley v. Head, No. 00-13980, and Mobley's motion to stay his execution.

BARKETT, Circuit Judge, specially concurring in part and dissenting in part, in which WILSON, Circuit Judge, joins:

I agree completely with Judge Tjoflat's thorough opinion with the exception of his resolution of Mobley's claim. I agree with Judge Tjoflat that the district court denied Mobley's motion on the basis of an improper interpretation of <u>Felker v. Turpin</u>, 101 F.3d 657 (11th Cir. 1996). I do not agree, however, that we should nonetheless affirm the court's denial of Mobley's motion because it fails to state a case under Rule 60(b)(3). This Court reviews a denial of a 60(b) motion for abuse of discretion. <u>See</u> <u>Booker v. Singletary</u>, 90 F.3d 440, 442 (11th Cir. 1996). Under that standard, where the district court bases its decision on an incorrect interpretation of the law, we are to remand for further proceedings rather than exercise our discretion by affirming the court's denial on other grounds.[1] I do not agree that Mobley fails to state a claim under Rule 60(b)(3). Mobley argues in his motion that recently discovered evidence indicates that the district court's judgment

---

[1]As stated in <u>Collins v. Seaboard C.R. Co.</u>,

A discretionary decision that falls within permitted bounds, but is based on false premises, raises the question on review as to whether the trial court would have come to the same conclusion using proper premises. That it could have does not satisfy the inquiry as to whether it would have reached the same result. The affirmance of a discretionary decision that is based on an improper view of the facts or the law merely reflects the appellate court's exercise of discretion that rightfully belongs to the trial court. The proper role of appellate review permits a remand for further proceedings when a discretionary decision has been made on false premises.

<u>Id.</u>, 681 F.2d 1333, 1335 (11th Cir. 1982).

132

denying his prior habeas petition rests on a defective foundation because the court relied upon facts (regarding district attorney Fuller's prior testimony) that the State knew or should have known were false. In my view, Mobley clearly alleges that although Fuller's misleading testimony was given in state court, the State's actions regarding Fuller's testimony in federal habeas court created infirmities in that proceeding in addition to the state proceedings. Furthermore, Mobley's motion could be construed to also raise claims under 60(b)(2) ("newly discovered evidence") or 60(b)(6) ("any other reason justifying relief from the operation of the judgment"). Thus, Mobley's claim should be remanded to the district court for resolution on the merits.